

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-2003

# Carmon v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Carmon v. Comm Social Security" (2003). *2003 Decisions.* Paper 96.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/96

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2539

ANTONIO CARMON,
Appellant

v.

JO ANNE B. BARNHART,
Commissioner of Social Security

On Appeal from the United States District Court
for the District of New Jersey
(Dist. Court No. 01-cv-00624)
District Judge: Hon. Joseph A. Greenaway, Jr.

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2003

Before: RENDELL, BARRY and CHERTOFF, Circuit Judges

(Filed: November 24, 2003)

OPINION

CHERTOFF, Circuit Judge:

Antonio Carmon appeals from an order of the District Court affirming the decision

1

of the Commissioner of Social Security denying Carmon disability insurance benefits and supplemental security income under Title II and Title XVI, respectively, of the Social Security Act. Before us, as before the District Court, Carmon alleges that the Administrative Law Judge (ALJ) erred in determining that Carmon's impairments do not entitle him to disability benefits and supplemental security income, and that the ALJ erred in determining that, despite his health problems, Carmon was capable of returning to work. The District Court exercised jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)[1] and entered a final order affirming the ALJ's opinion and dismissing Carmon's challenge on March 31, 2003. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will vacate the order of the District Court, remanding with directions to remand the cause to the ALJ for further proceedings in conformity with this opinion.

I.

Because this opinion is not precedential, we will recite only those facts relevant to disposition.

Antonio Carmon has HIV. On April 2, 1996, Carmon went to Rahway Hospital in Rahway, New Jersey, sick with what he thought was the flu. Carmon was admitted to the hospital and spent the better part of the following two months there. Carmon was treated

---

[1] "The law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). We provide citations only to the regulations respecting disability insurance benefits.

2

by Dr. Kornicki, and was referred to an HIV specialist, Dr. Ruggeri-Weigel. Each doctor noted a host of symptoms and possible causes, and ordered a battery of tests. Among the symptoms and possible causes were: pneumonitis, febrile illness, thrush, malnutrition, diarrhea, and history of HIV positive disease.

The results of the tests ordered by both doctors showed an absence of pneumocysistis carnii, or any other of a number of viral indicators. Indeed, by time of discharge, Dr. Ruggeri-Weigel noted that Carmon was "feeling fine" and denied "fever, night sweats, diarrhea, or fatigue." Although during his June 6, 1996 visit with Carmon Dr. Kornicki noted weight gain of sixteen pounds, his outlook for Carmon was never as optimistic as that of Dr. Ruggeri-Weigel. On October 17, 1996, well after discharge, Dr. Kornicki wrote that Carmon's long-term prognosis was "difficult to state" due to his multiple medications and viral load.[2] Dr. Kornicki also expressed that "the likelihood of [Carmon] doing any constrictive work [was] probably extremely poor." It is undisputed that Carmon has not worked since April 15, 1996.

On August 27, 1996, Carmon applied for disability insurance benefits. On September 20, 1996, Carmon applied for supplemental security income for the period

_____

[2] Carmon's T-helper lymphocyte (CD4) count was below 200, an indication that his "susceptibility [to] opportunistic disease [wa]s considerably increased," 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 14.00(D)(3)(a)(iii), twice within one year: a count of 20 in October, 1996, and a count of 106 in July, 1997.

beginning April 15, 1996.[3]  Carmon's applications were denied, both initially and on

reconsideration, so Carmon exercised his right to de novo consideration by an ALJ.  After

a hearing on May 6, 1998, the ALJ issued an opinion.  The ALJ first determined that

Carmon had proven he was not gainfully employed, that he had an impairment, and that

his impairment was severe.[4]  But the ALJ determined that Carmon's medical condition

was not equivalent to anything on the Social Security Administration list of ailments that

are sufficiently severe to justify a presumption in favor of benefit-entitling disability.

The ALJ further determined that Carmon retained the capacity to perform "light

work" pursuant to 20 C.F.R. § 404.1567.  Under this definition, the ALJ found that

Carmon was capable of lifting 10 pounds frequently and up to 20 pounds occasionally.

Id.  The ALJ concluded that Carmon was therefore able to return to his past relevant work

as a hospital food service employee, which Carmon's files characterized as requiring

frequent lifting of items up to 20 pounds.  Having determined that Carmon was not

entitled to disability benefits, the ALJ did not proceed further.

---

[3] In connection with his social security claims, Carmon met with a physician from
the New Jersey Department of Labor, Dr. Aruna S. Patel, on May 13, 1997.  Although Dr.
Patel never treated Carmon and met with him only once, Dr. Patel conducted a thorough
physical examination.  Of significance, Dr. Patel observed that Carmon "looked very
healthy" and needed little or no assistance during the examination, for example, getting
onto the examination table or dressing himself.
    The results of the tests run at Rahway Hospital and those conducted by Dr. Patel
were also reviewed by state physicians, who drew conclusions with respect to Carmon's
work capacity.

[4] The Commissioner has promulgated a five-step process of evaluating disability
benefit claims.  See section II, infra.

4

Carmon sought review of the ALJ's decision by the Appeals Council, but the Appeals Council determined that there were no grounds for such review. After exhausting these administrative remedies, Carmon filed the present action in the United States District Court for the District of New Jersey on February 7, 2001.

Before the District Court, as before us, Carmon contended that the ALJ erred by: (1) failing to explain why Carmon's impairments, alone or in combination, did not meet the criteria of paragraphs 14.08(D)(2)(b), 14.08(M) or 14.08(N) of the list of presumptively disabling impairments contained in the Social Security regulations; (2) rejecting a treating physician's medical opinion in favor of that of a non-treating physician; (3) determining that Carmon had a residual functional capacity sufficient for him to perform his past relevant work; and (4) rejecting Carmon's subjective complaints without sufficient analysis. The District Court affirmed the ALJ's decision on all grounds. This timely appeal followed.

## II.

Although we have plenary review of all legal issues, see Krystoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995), our factual review is limited to whether substantial evidence supports the ALJ's determination. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." Jesurum v. Sec'y of the United States Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'It means such relevant evidence as a reasonable

mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). Overall, the substantial evidence standard is a deferential standard of review. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

A claimant is entitled to disability insurance benefits if he or she can prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered unable to engage in any substantial gainful activity "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423 (d)(2)(A); see also Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001).

The Social Security Administration has promulgated a five-step evaluation process for use by the Commissioner of the Social Security Administration in determining whether an individual is disabled. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. The process requires the Commissioner to sequentially determine the following:

(1) Whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(b).

6

(2) Whether the claimant is suffering from a severe impairment. If not, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(c).

(3) Whether the evidence establishes that the claimant suffers from any ailment in a list of ailments presumed serious enough to preclude gainful work. If so, the claimant is automatically eligible for disability benefits. If not, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(d).

(4) Whether the claimant retains the "residual functional capacity" to perform his past relevant work. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(e).

(5) Whether—given the claimant's medical impairments, age, education, past work experience, and "residual functional capacity"—jobs exist in significant numbers in the national economy that the claimant can perform. If so, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(f).

The claimant bears the burden of proof at the first four steps, and the Commissioner bears the burden at the fifth. See Fargnoli, 247 F.3d at 39.

The ALJ determined that Carmon had proven he was not gainfully employed and that his impairment was severe. Therefore, steps 1 and 2 are not at issue. At step 3, however, the ALJ determined that Carmon's medical condition was not equivalent to anything on the list of presumptively disabling ailments. The ALJ's analysis, in its entirety, states:

> [Carmon] has no impairment which [sic] meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). No treating or examining phyisician has mentioned findings equivalent in severity to the criteria of any listed impairment. Specifially, the undersigned evaluated the claimant's HIV infection under the requirements of listing 14.08 (Id.). Although the claimant does have some symptoms of HIV, his condition fails to meet or medically equal the requirements of this listed impairment.

Carmon challenges that determination, contending that his condition falls within (or is equivalent to) paragraphs 14.08(D)(2)(b), 14.08(M) or 14.08(N), and that the ALJ's determination is impermissibly conclusory.

We are troubled by the ALJ's summary determination.[5] We have repeatedly stated that we are unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection. See Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). Our precedent requires much more than a mere conclusory statement that the claimant's conditions are not found in the listings. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). The reason is not merely a desire to make the ALJ jump through additional "hoops." Substantial evidence review is all but impossible without an adequate indication of what the ALJ considered, what he or she rejected, and why. Cotter, 642 F.3d at 705-6. But we need not determine whether a remand is necessary here to clarify the process by which the ALJ reached his step 3 determination, because remand is

---

[5] We note that what the ALJ justified in one cursory paragraph required more than seven pages of dense briefing by the Government to buttress.

8

unquestionably necessary with respect to the ALJ's step 4 determination.

The ALJ determined that Carmon was capable of "light work," as that term is defined by 40 C.F.R. § 404.1567(b). The definition of "light work" provides that an employee be asked to lift up to 20 pounds, but <u>frequent</u> lifting is restricted to items <u>10 pounds</u> or less. 40 C.F.R. § 404.1567(b). The ALJ also explicitly looked to and credited Carmon's description of his duties at his past relevant work as a hospital food service worker. Carmon's filings make clear that as a hospital food service worker he was <u>frequently</u> expected to lift cartons of juice and milk weighing up to <u>20 pounds</u>.[6]

The ALJ's residual capacity determination under step 4, therefore, is at odds with his determination that Carmon was capable of resuming his past relevant work: the ALJ would send Carmon back to do <u>frequently</u> that which the ALJ already determined Carmon could only do <u>occasionally</u> – lift 20 pounds. The definition of "medium work" would seem more appropriate to fit Carmon's past relevant work as it provides that the employee be asked to lift up to <u>25 pounds frequently,</u> and more than that infrequently. 40 C.F.R. § 404.1567(c). We cannot square the responsibilities of Carmon's past relevant work with the ALJ's determination of his residual capacity, given the C.F.R.'s definitions of light

---

[6] Carmon's filings actually state that the heaviest object he was expected to lift was 20 pounds, and that he was expected to lift up to 25 pounds frequently. This inconsistency is due to the choices with which Carmon was presented on the form he completed. The two responses can be harmonized by concluding that Carmon's prior relevant work required him to lift no more than 20 pounds, but required him to do so frequently.

9

and medium work.[7]   A remand is necessary to clarify how the ALJ determined that Carmon was able to return to his past relevant work, in light of his residual capacity.  We also strongly advise the ALJ to take note of our holdings in Cotter, Burnett and their progeny, and to consider not restricting a revised opinion to clarification of step 4.

III.

For the reasons stated above, we vacate the District Court's order and remand with instructions to remand to the Commissioner for additional proceedings consistent with this opinion.

/s/ Michael Chertoff, Circuit Judge

---

[7] Carmon also challenges the ALJ's step 4 determination as: (1) impermissibly conclusory; (2) impermissibly based on the findings of a non-examining physician despite contradictory findings of an examining physician; and (3) impermissibly dismissive of Carmon's subjective symptoms (e.g., pain, fatigue, etc.).  We decline to reach the merits of these challenges in light of our determination that a remand is necessary, but reiterate our recommendation that the ALJ reconsider all bases for his prior opinion.