

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2006

# Wisniewski v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1921

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wisniewski v. Comm Social Security" (2006). *2006 Decisions.* Paper 1392.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1392

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――

No. 05-1921

―――――

RICHARD T. WISNIEWSKI

Appellant

v.

*JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

*(Amended pursuant to F.R.A.P. 43(c))

―――――

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA
(Civ. No. 04-cv-02576)

―――――

Submitted pursuant to LAR 34.1(a)
on November 15, 2005

Before: ROTH, FUENTES, and BECKER, Circuit Judges

(Filed: March 24, 2006)
_____

OPINION OF THE COURT
_____

Fuentes, Circuit Judge.

        Appellant Richard T. Wisniewski ("Wisniewski") appeals from an order of the

District Court of the Eastern District of Pennsylvania affirming the final decision of the Commissioner of Social Security (the "Commissioner") denying the Appellant Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-44. In the Commissioner's final decision, the Commissioner found that, despite a knee injury that prevented Wisniewski from returning to his previous occupation as a longshoreman, Wisniewski was able to perform sedentary labor in the national economy. Wisniewski argues that the decision failed to afford adequate weight to the opinion of his treating physician that Wisniewski could perform only two hours of sedentary labor per day. For the reasons stated below, we reverse.

I.

On March 29, 2000, while working as a longshoreman loading and unloading cargo for the Delaware River Stevedores, Wisniewski fell fifteen feet from a catwalk after the railing supporting him snapped. The fall fractured his left leg and his right arm, rendering him unable to work.

On April 1, 2000, Wisniewski underwent surgery on his left leg. The operating surgeon was Dr. Robert Taffet ("Dr. Taffet"), who has since supervised his treatment and recovery. Wisniewski was discharged from the hospital four days later and began physical therapy on May 12, 2000. By July 2000, his injured leg could bear full weight, x-rays of the injury showed that it had healed, and Dr. Taffet reported his range of motion was "fair" with further improvement expected with continued physical therapy. (Appendix "App." at 233.) Dr. Taffet reported that Wisniewski was unable to return to

2

work, but might be able to perform sedentary work.  (Id.)  However, considering that Wisniewski had only a tenth grade education and that his sole training was as a longshoreman, a position he had held for twenty-seven years, Dr. Taffet opined that it was "unlikely" that Wisniewski would be able to return to work.  (Id)[1]

By November 8, 2000, Wisniewski was ready to end physical therapy and resume exercise at a gym.  (Id. at 230.)  Although he complained of tightness in his knee, he successfully controlled the pain with Motrin.  (Id.)  However, Dr. Taffet concluded that Wisniewski would most likely require total knee replacement in the future.  (Id.)  On August 1, 2001, Dr. Taffet examined Wisniewski in preparation for surgery to remove hardware from his injured knee, and again noted that Wisniewski would require total knee replacement in the future.  (Id. at 229).

On September 17, 2001, Dr. Taffet performed his second surgery on Wisniewski's knee, this time to remove hardware.  Upon Wisniewski's release from the hospital, Dr.

---

[1]    In August 2000, Dr. Taffet referred Wisniewski to a licensed social worker, who treated him for depression resulting from his injuries and his inability to return to his job. (App. at 231.)  The social worker referred Wisniewski to a psychiatrist for treatment with anti-depressant medication.  (Id. at 175.)  Wisniewski underwent psychiatric treatment for several years.  On February 19, 2003, at the Commissioner's request, Wisniewski was examined by Dr. Theodore Brown ("Dr. Brown"), a psychologist.  (Id. at 300-03.)  Dr. Brown reported that Wisniewski was suffering from major depressive disorder and generalized anxiety disorder.  (Id.)  Dr. Brown reported that Wisniewski was able to follow and understand simple directions, perform simple, rote tasks, but that his memory was mildly impaired and his ability to sustain concentration was potentially compromised due to several factors such as fatigue and low tolerance for stress.  (Id.)  Although Wisniewski's psychiatric treatment and diagnosis was addressed by the ALJ's decision, it is not the subject of this appeal.  Therefore, we do not address it.

Taffet ordered another course of physical therapy. At a follow up examination on November 6, 2001, Wisniewski was experiencing sporadic pain, but was "doing well with physical therapy." (Id. at 226.) Dr. Taffet prescribed him a knee brace for physical therapy and pain medication. (Id.) At another follow up visit on January 30, 2002, Dr. Taffet reported that Wisniewski's symptoms were fairly controlled with the aid of the brace and that his range of motion was slightly improved, but that he should not return to any work other than a purely sedentary position. (Id. at 220.)

Dr. Taffet performed a third surgery on Wisniewski's knee in June 2002, this time to remove a wire that had loosened as a result of his having slipped on a garden hose. On June 19, 2002, Dr. Taffet reported that the pain associated with the loose wire had resolved and the incision had healed fully.

On September 10, 2002, at the request of the Commissioner, Wisniewski underwent an orthopedic evaluation by Dr. Arthur Marks ("Dr. Marks"), a specialist in occupational medicine. (App. At 152-56.) Dr. Marks reported that Wisniewski complained of pain in his left knee, stiffness after being still, and that his knee always felt tight. (Id. at 152.) Dr. Marks reported that Wisniewski did light chores around his home, such as laundry or clearing the table, and that he was able to drive a car. (Id. at 153.) Dr. Marks' report stated that Wisniewski walked with a mild limp, used no assistive devices, and appeared comfortable getting on and off the examination table. (Id. at 153-54.) Dr. Marks reported that his range of motion in his left knee was "limited," that he had some grinding in his left knee, and that he was able to walk on his heel and toes but unable to

4

squat.  (Id. at 154.)

One week later, at an appointment with Dr. Taffet, Wisniewski complained of pain and stiffness in his knee that progressed throughout the day.  (Id. at 216.)  X-rays reveals advanced lateral compartment arthrosis in his left knee.  (Id.)  After discussing options, Wisniewski consented to full knee replacement.

On October 20, 2002, Wisniewski underwent a consultation with a state agency review physician.[2]  (Id. at 196-203.)  The state physician described Wisniewski as walking with a mild limp but having no difficulty getting on or off of the examination table.  (Id. at 197.)  The state physician opined that Wisniewski could lift or carry 10 pounds, stand or walk for at least two hours of an eight hour workday, and would sit with normal breaks for about six hours of an eight hour workday.  (Id.)  Based on Dr. Taffet's office notes from the January 2002 visit, the state physician concluded that, with a brace, Wisniewski could perform purely sedentary work.  (Id.)  The state physician also indicated that there were no conclusions in Dr. Taffet's notes regarding Wisniewski's limitations or restrictions that were significantly different from the state physician's findings.  (Id. at 202.)

On November 4, 2003, Dr. Taffet performed his fourth surgery on Wisniewski, a full knee replacement.  (Id. at 205-06.)  Upon discharge from the hospital, he was

---

[2]Although the ALJ opinion refers to the State agency's review physicians as Dr. Vitolo and Dr. Atiena, it is not clear from the record which doctor performed this review.  (See App. at 196-203.)

prescribed additional physical therapy.  (Id.)  On December 2002, Dr. Taffet reported that

Wisniewski had improved range of motion in his left knee, and that he expected

Wisniewski to reach maximum improvement in six months.  (Id. at 208.)

On January 28, 2003, Wisniewski reported new problems to Dr. Taffet.

Wisniewski told Dr. Taffet that he was having difficulty standing, walking, and sitting for

prolonged periods.  (Id. at 327.)  Dr. Taffet reported that Wisniewski was "coming along

fairly well" but that, given these complaints, his inability to sit or walk for "any length of

time," his inability to return to his prior occupation, and his lack of formal education

beyond the tenth grade, Wisniewski was disabled.  (Id.)

On February 19, 2003, at the Commissioner's request, Wisniewski underwent a

consultative examination performed by Dr. Nithyashuba Khona ("Dr. Khona"), a

specialist in physical medicine and rehabilitation.  (Id. at 306-07.)  Dr. Khona noted that

Wisniewski walked with a mild limp and was unable to squat or to walk on his heels or

toes.  (Id.)  Dr. Khona also noted that Wisniewski's left knee had decreased in its

flexibility.  (Id.)  Dr. Khona concluded that Wisniewski's prognosis was "fair," and that

he had a "moderate restriction" for standing, walking, squatting, or kneeling because of

his recent knee surgery.  (Id.)  Dr. Khona did not report on Wisniewski's ability to sit for

prolonged periods or any other functional limitations.  (Id.)

On April 14, 2003, Dr. Taffet performed a fifth surgery on Wisniewski's left knee.

This surgery was to restore extension and flexion following knee replacement.  At a

follow up appointment on August 26, 2003, Dr. Taffet reported that Wisniewski was

6

walking well and had nearly full knee extension and flexiron, with nearly no knee instability, and that he had knee tenderness. (Id. at 314.) Dr. Taffet stated that Wisniewski was ready to end physical therapy and resume exercising at a gym. (Id.) He concluded that Wisniewski was "still disabled and unable to return to his prior occupation." (Id.)

On December 1, 2003, Dr. Taffet prepared a work restriction evaluation for Wisniewski. Dr. Taffet reported that Wisniewski could work for two hours per day with intermittent sitting for thirty minutes, walking for ten, and standing for ten, and that he could drive a car, and that he could use his right foot to operate foot controls or for repetitive movement. (Id. at 333.) Dr. Taffet also reported that Wisniewski was unable to work in cold or damp conditions, at heights, or around high speed machinery. (Id.)

Wisniewski filed a Title II disability application on April 17, 2002. The application was denied by initial and reconsidered state agency determinations of October 30, 2002 and March 19, 2003. On May 12, 2003, Wisniewski filed a timely request for a hearing before an Administrative Law Judge (the "ALJ"). After holding a hearing, the ALJ issued a decision stating that at all times relevant to the decision, except for brief periods following the accident and surgeries, Wisniewski was not disabled within the meaning of the Social Security Act. (See ALJ Opinion, App. at 13-23.) The ALJ found that Wisniewski was able to perform "the full range of sedentary exertional work" and

7

mentally able to perform simple, repetitive, work-related tasks.[3] (Id. at 20.) Wisniewski

appealed to the district court of the Eastern District of Pennsylvania, and both parties filed

for summary judgment. The case was referred to the magistrate judge, who

recommended that Wisniewski's motion for summary judgment be granted and that the

matter be remanded to the Commissioner for further development of the record. The

Commissioner filed objections to the magistrate judge's Report and Recommendation,

and on March 11, 2005, Judge William, Yohn, Jr. chose not to accept the magistrate

judge's report and recommendation, and to grant summary judgment in favor of the

Commissioner. Wisniewski timely appealed to this Court. This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.[4]


## II.

To qualify for DIB, a claimant "must demonstrate that there is some 'medically

determinable basis for an impairment that prevents him from engaging in any 'substantial

gainful activity' for a statutory twelve-month period.: Strunkard v. Sec'y of Health and

Human Servs., 841 F.2d 57, 59 (3d Cir. 1988). When evaluating a claim, the

Commissioner undertakes a five step analysis, considering whether: (1) the claimant

---

[3]Wisniewski appealed the ALJ decision, but the Appeals Council denied his request
for review, making the ALJ's decision the final decision of the Commissioner.

[4]This Court's reviews de novo whether the Commissioner's final decision, here the
ALJ decision, was supported by substantial evidence. Plummer v. Apfel, 186 F.3d 422,
427 (3d Cir. 1999).

8

worked during the alleged period of disability; (2) the claims has a severe, medically determinable impairment; (3) the impairment meets the requirements of a listed impairment; (4) the claimant can continue to perform past relevant work; and (5) the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). The claimant bears the burden of proving steps one through four and, if the claimant satisfies his burden, the burden shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. Sykes, 229 F.3d at 265.

There is no dispute that Wisniewski proved the first four steps of the analysis. The only remaining issue is therefore whether substantial evidence supported the Commissioner's determination that Wisniewski was capable of performing other work. Under federal regulations, the responsibility for assessing whether a claimant's residual functional capacity allows him to pursue other work lies with the ALJ. 20 C.F.R. § 404.1546(c), who is required to consider "all of the relevant medical evidence and other evidence." 20 C.F.R. § 404.1545(a)(3).

Wisniewski argues that the ALJ failed to accord proper weight to the opinion of Dr. Taffet, who stated that Wisniewski could not perform more than two hours of sedentary labor per day. It is well settled that, under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight. See 20 C.F.R. § 404.1527(d)(2); Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). More weight is given to a claimant's treating physician

9

because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Where a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given "controlling weight." Id.; Fargnoli, 247 F.3d at 43.

Here, the ALJ considered Dr. Taffet's opinion but explicitly chose not to give significant weight to the treating doctor's testimony because the ALJ found that the testimony: 1) was not supported by objective evidence, and 2) was contradicted by the objective evidence of Drs. Marks and Khona and the state agency review physicians. (App. at 18-19.) The ALJ stated that Dr. Taffet's notes focused only on Wisniewski's ability to stand and walk, and not to sit. (App. at 19.) Moreover, the ALJ noted that Dr. Marks' examination and Dr. Khona's examination provided objective evidence that the patient had the residual functional capacity to perform sedentary labor. (Id.)

The ALJ is correct that Dr. Taffet provides little objective evidence to support his opinion that Wisniewski could not perform more than two hours of sedentary work per day. Dr. Taffet first remarks on Wisniewski's ability to sit were made on January 28, 2003, during a follow-up procedure after Wisniewski's fourth surgery. During this visit,

Dr. Taffet notes that Wisniewski has pain and difficulty standing, walking, and sitting for prolonged periods. (Id. at 327.) After examination, Dr. Taffet concludes that Wisniewski is unable to sit for "any length of time" but does not provide any evidence of how he came to this conclusion other than Wisniewski's own complaint. On August 26, 2003, at a follow up examination after Wisniewski's fifth and final surgery, Dr. Taffet seemed optimistic about Wisniewski's recovery – reporting nearly full knee extension and flexiron and no knee instability – but concludes that he is "still disabled" without providing objective evidence of how he reached this conclusion. (Id. at 314.) Finally, on December 1, 2003, in preparing Wisniewski's work restriction evaluation, Dr. Taffet reported that Wisniewski could work only two hours each day with intermittent sitting for thirty minutes and intermittent standing or walking for ten minutes. (Id. at 333.) Again, Dr. Taffet provides little objective evidence for this conclusion.

The ALJ was incorrect, however, in the assertion that Dr. Taffet's conclusions were contradicted by the consulting doctors. Dr. Marks' report does not address Wisniewski's ability to sit for prolonged periods of time. Moreover, even if the report did address this functional capability, the timing of the report makes it of questionable relevance. Dr. Marks' report was based upon an examination conducted on September 10, 2002, after Wisniewski's third surgery. (Id. at 152-56.) Wisniewski had not yet undergone two additional surgeries, one of which would be a full knee replacement. There is no evidence that Wisniewski even began to complain off difficulty sitting until January 28, 2003, after his full knee replacement surgery. Given that the report was

11

made at a time before Wisniewski's complaints and treatment changed considerably and does not address the specific topic that is the crux of this appeal – Wisniewski's ability to sit for prolonged periods of time – it cannot be said to provide any strong countervailing evidence to Dr. Taffet's later and more comprehensive diagnosis.

Similarly, the state agency review physician[5] performed an examination in October 20, 2002 – before Wisniewski's full knee replacement and before Wisniewski began to complain of problems sitting for prolonged periods of time. (Id. at 196-203.) The state agency review physician opined that Wisniewski could sit with normal breaks for six hours of an eight hour workday. The state agency review physician's report relied on Dr. Taffet's previous notes of Wisniewski's January 2002 visit to Dr. Taffet, and indicated that the physician made no conclusions that conflicted with those notes. The state agency review physician was correct; up until that point, Dr. Taffet had never expressed an opinion about Wisniewski's ability to sit for prolonged periods. This was because Wisniewski only began to have problems sitting for prolonged periods – and thus Dr. Taffet only began opining that Wisniewski should not sit for prolonged periods – in January 2003. At that time of the state agency review physician's report, the state agency review physician and Dr. Taffet were in accord about Wisniewski's potential to perform sedentary work. As stated above, it was not until one surgery and three months after the state agency review physician's report that these problems were noted by Dr. Taffet.

---

[5]Dr. Vitolo or Dr. Atiena – see footnote 2.

12

Therefore, the state agency review physician's report does not provide evidence that contradicts Dr. Taffet's later opinion that Wisniewski could not perform sedentary labor.

The ALJ also relied on Dr. Khona's report, which is more relevant because it was formulated in February 2003, after Wisniewski began to complain of problems sitting and after Dr. Taffet first opined that Wisniewski was unable to sit for long periods. (Id. at 306.) However, Dr. Khona's report does not shed much light on that subject of Wisniewski's ability to sit for long periods of time. First, Dr. Khona's report was dated before Wisniewski's final surgery, and thus does not provide an adequate picture of Wisniewski's condition after his treatment was completed. More importantly, however, Dr. Khona's report states that Wisniewski walked with a mild limp and was unable to squat or to walk on his heals and toes. (Id.) Dr. Khona did not address whether Wisniewski had any problems sitting for long periods of time. Given the lack of evidence or opinion that Dr. Khona provides regarding Wisniewski's ability to sit for long periods of time, Dr. Khona's report does not provide any objective evidence that Wisniewski had no problems sitting. Because Dr. Khona's report does not even address Wisniewski's residual functional capacity for sedentary labor, the report sheds less light on this topic than Dr. Taffet's reports.

The ALJ's presumption that Dr. Khona's report provides objective evidence that contradicts Dr. Taffet's opinion is not supported by substantial evidence. As stated above, the burden is on the Commissioner to show that Wisniewski could perform other work in the economy. Yet, for the reasons described above, the reports upon which the

13

ALJ relied provide little if any objective evidence of Wiseniewski's residual capacity for sedentary labor. Moreover, none of the Commissioner's consulting physicians had the benefit of reviewing all of Wisniewski's treatment history in rendering their opinions as to the extent of his disability. On the contrary, Wisniewski provided the opinion of a treating physician who saw him continuously through four years of treatments and five surgeries. Although it is true that the objective evidence supporting Dr. Taffet's opinion is meager, for the reasons states above, there is no objective evidence to the contrary. Therefore, the ALJ's finding that the Commissioner had fulfilled its burden was not supported by substantial evidence.

## III.

For the reasons stated above, we find that substantial evidence does not support the ALJ's decision that the Appellant could perform other work in the economy pursuant to 20 C.F.R. § 404.1520. Accordingly, we reverse the denial of disability insurance benefits to the Appellant.

14