

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2006

# Cacere v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3502

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Cacere v. Comm Social Security" (2006). *2006 Decisions.* Paper 767.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/767

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3502
_____

YOLANDA CACERE O/B/O
DIANA CACERE,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 04-cv-1793)
District Judge: Honorable William G. Bassler

_____

Submitted Under Third Circuit LAR 34.1(a)
April 21, 2006

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>,
and DuBOIS,[*] <u>District Judge</u>

(Opinion filed July 10, 2006)
_____

OPINION
_____

_____

[*] Honorable Jan E. DuBois, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

DuBOIS, <u>District Judge</u>

Appellant Yolanda Cacere ("Cacere") appeals from an order of the District Court for the District of New Jersey affirming the final decision of the Commissioner of Social Security ("Commissioner") which denied Social Security benefits. The District Court determined that the Commissioner's decision was supported by substantial evidence in the administrative record. For the reasons stated below, we affirm.

## I. Factual Background and Procedural History

On January 14, 2002, Cacere filed an application for Child's Supplemental Security Income Benefits on behalf of her daughter ("claimant"), alleging disability as of October 1, 1999. In the application, Cacere alleged that claimant suffered from a learning disability, lack of sleep, and spitting. These conditions caused claimant to be tense, anxious, and lack an appetite. Clinical evaluations in the record explain that claimant suffered from adjustment, learning, and obsessive compulsive disorders.

After Cacere's application was denied initially and upon reconsideration, Cacere requested *de novo* review before an Administrative Law Judge (the "ALJ"). An evidentiary hearing was held on November 13, 2003; both claimant and Cacere testified and were represented by counsel. The key evidence is summarized below.

Dr. Victor Hernandez, claimant's treating psychiatrist, began treating claimant on September 25, 2001. The initial diagnosis was adjustment disorder with depressed mood. In the report of that examination, Dr. Hernandez noted "R/O OCD [rule out obsessive

compulsive disorder]." (Tr. 122) In his report dated April 25, 2002, Dr. Hernandez noted that he prescribed Luvox for claimant's obsessive compulsive disorder on December 12, 2001. The April 25, 2002 report includes a diagnosis, *inter alia*, of obsessive compulsive disorder. In that report, Dr. Hernandez opined that claimant had an "average" intellect and that her ability to reason and use judgment were "developmentally appropriate." (Tr. 94) Dr. Hernandez's prognosis as of April 25, 2002 was: "It is good." (Tr. 95)

The last examination of claimant by Dr. Hernandez documented in the record was on July 31, 2003. The report of that examination noted that depressive symptoms had been "resolved" and that treatment with Luvox, which was increased from 25 milligrams "OD [once daily]" to 50 milligrams once daily on February 7, 2002, had resulted in "improvement" in claimant's obsessive compulsive disorder symptoms. (Tr. 119)

Elias Fernandez, Ph. D., administered claimant's intelligence test in April 2002. Claimant obtained a verbal IQ of 64, a performance IQ of 72, and a full scale IQ of 65. Based on these scores, claimant was diagnosed with a learning disorder and borderline intellectual functioning. (Tr. 86) Dr. Fernandez noted, however, that "[d]ue to social and cultural factors [claimant's] nonverbal results may be a better indication of her true abilities which place her in the low end of the borderline range." (Tr. 85)

Dr. Lawrence Laveman performed a consultative examination of claimant on April 12, 2002. He described claimant as a "10 year-3 month old female with emotional and sleeping problems along with [a] learning disability." (Tr. 87) Dr. Laveman added that

3

claimant had "a prominently atypical affect, altered social awareness, altered social appropriateness and altered sense of social boundaries." (Tr. 89)

On January 21, 2003, claimant's Language Arts & Social Studies teacher John T. Matranga submitted a teacher questionnaire. Mr. Matranga, who had six months of experience serving as claimant's teacher, reported that claimant had only slight problems acquiring and using information, no problems attending and completing tasks, no problems interacting and relating with others, no problems moving about and manipulating objects, and no problems caring for herself. In sum, Mr. Matranga wrote that claimant "is a very quiet, introverted student who has some difficulty with comprehension (written and oral). She is somewhat withdrawn socially but has made friends within the class." (Tr. 105)

At a hearing before the ALJ, Cacere testified that claimant, who was in the sixth grade, was not placed in any special classes at that time but that she would soon be assigned to such classes three days a week. Cacere also explained that claimant attended an after-school tutoring program and had been receiving treatment from a psychiatrist at the Jersey City Medical Center once a month. In addition, Cacere described claimant as "absentminded, distracted" and "[i]n another world." (Tr. 142)

Based on a review of this evidence, the ALJ determined that claimant was not disabled because she did not have a severe impairment that met, medically equaled, or functionally equaled an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1. On

4

February 21, 2004, the Appeals Council determined that there were no grounds for review and, therefore, the ALJ's determination became the final decision of the Commissioner. Cacere then filed this action and sought review of the ALJ's determination pursuant to 42 U.S.C. § 405(g). On May 17, 2005, the District Court concluded that the Commissioner's decision was supported by substantial evidence.

## II. Jurisdiction and Standard of Review

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. On appeal from the District Court's decision affirming the Commissioner's denial of benefits, our review of legal issues is plenary. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). We review the ALJ's factual findings only to determine whether they are supported by substantial evidence. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those facts, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

## III. Discussion

### A.

Regulation § 416.924 sets out a three-step analysis for determining child disability

5

claims. 20 C.F.R. § 416.924. Under this analysis, a child is disabled if: (1) she is not engaged in substantial gainful activity; (2) she has a medically determinable impairment that is severe; and (3) the medically determinable severe impairment meets, medically equals, or functionally equals an impairment Listing found in 20 C.F.R., pt. 404, subpt. P, app. 1. An impairment functionally equals a listed impairment if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). Six domains are to be considered: acquiring and using information; attending and completing tasks; interaction and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In this case, the ALJ concluded that claimant was not disabled at step three of the sequential analysis. First, the ALJ found that claimant was not engaged in substantial gainful activity. Second, the ALJ considered claimant's intelligence testing scores, medical reports, the teacher evaluation, and the testimony and concluded that claimant had one severe impairment, a learning disorder. However, the ALJ found that claimant's affective and obsessive compulsive disorders were not severe and that claimant's severe impairment did not meet the Listing for mental retardation. *See* 20 C.F.R., pt. 404, subpt. P, app. 1, § 112.05. Finally, the ALJ determined that claimant's limitations were not the functional equivalent of any listed impairment.

**B.**

6

Cacere argues that the Commissioner's decision is not supported by substantial evidence because the ALJ negated evidence of presumptive disability under Listing 112.05D. A finding of presumptive disability, under Listing 112.05D, requires: (1) a valid verbal, performance, or full scale IQ of 60 through 70 and; (2) a physical or other mental impairment imposing an additional and significant limitation of function.

Cacere contends that she has demonstrated a valid IQ score between 60 and 70 and an additional severe impairment – obsessive compulsive disorder. Cacere also argues that the ALJ committed an error of law by failing to properly explain his decision to reject "uncontradicted evidence" of impairment under the rule announced in *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (stating that the ALJ should make "a clear and satisfactory explication of the basis on which [his decision] rests").

1. *Claimant's IQ Test Scores*

Claimant scored a verbal IQ of 64, a performance IQ of 72, and a full scale IQ of 65. Although two of claimant's scores placed her within the requisite level of Listing 112.05D, the ALJ discredited the claimant's verbal and full scale IQ scores because these scores were at variance with the remainder of the evidence, including the report submitted by claimant's teacher, the fact that claimant was in her age-appropriate grade, and Dr. Hernandez's description of claimant's intelligence as "average." The IQ scores were further explained by Dr. Fernandez, the administrator of the test, who stated that social and cultural factors may have contributed to the low test scores and that the performance

7

IQ score would provide a better indication of claimant's true intellectual abilities. We agree with the District Court that the ALJ's finding regarding claimant's IQ scores is supported by substantial evidence.

In discrediting claimant's verbal and full scale IQ scores, the ALJ also explained that there was no evidence of what type of IQ test was administered and whether it was standardized. Cacere argues that the ALJ should have ordered a second IQ test in light of these concerns, but, after mentioning that he would consider ordering a second test, he did not do so. Based on those facts, we do not rely on the ALJ's unsupported statement regarding the type and standardization of the IQ test administered by Dr. Fernandez in concluding that ALJ's finding is supported by substantial evidence.

2. *Claimant's Obsessive Compulsive Disorder*

Cacere also argues that claimant's obsessive compulsive disorder qualified as an additional and significant impairment under Listing 112.05D, and that the ALJ's finding is based on "evidence nullification." We disagree. The additional and significant impairment under Listing 112.05D must be a "severe" impairment, as defined in 20 C.F.R. § 416.924(c). To demonstrate a "severe" impairment, an applicant must demonstrate something beyond "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. . . ." 20 C.F.R. § 416.924(c); *see also McCrea v. Commissioner of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

8

We conclude that the ALJ's finding that Cacere had not met her burden of demonstrating more than a "slight abnormality" attributable to claimant's obsessive compulsive disorder is supported by substantial evidence. Significantly, Dr. Hernandez opined that claimant's medical regimen resulted in improvement in symptoms of claimant's obsessive compulsive disorder. Of equal import, claimant's school teacher, Mr. Matranga, did not mention any significant behavioral abnormalities in his submission.

### 3. *Sufficiency of the ALJ's Explanation*

We also reject Cacere's contention that the ALJ failed to explain properly his discrediting of evidence in the record. We have repeatedly explained that "we are unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." *Walton v. Halter*, 243 F.3d 703, 710 (3d Cir. 2001). In viewing the ALJ's decision as a whole, we conclude that the ALJ's reasoning was sufficient to allow for meaningful judicial review.

As noted above, the ALJ rejected some of the IQ test scores because they were at variance with other evidence, including the report from claimant's treating psychiatrist and claimant's status in her age-appropriate grade. Regarding subjective allegations of claimant's obsessive compulsive disorder, the ALJ explained that it was less severe than alleged by Cacere, relying primarily on the evidence provided by Dr. Hernandez and claimant's teacher, Mr. Matranga, discussed previously.

9

## IV. Conclusion

Based on the foregoing analysis, we conclude that the Commissioner's final determination is supported by substantial evidence and, therefore, deny Cacere's request for a remand.