

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2007

# Yensick v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3914

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Yensick v. Comm Social Security" (2007). *2007 Decisions.* Paper 580.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/580

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3914
_____

WILLIAM YENSICK,

Appellant

v.

JO ANN B. BARNHART,
Commissioner of Social Security
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cv-00908)
District Judge:  Honorable Thomas M. Hardiman
_____

Submitted Under Third Circuit LAR 34.1(a)
May 18, 2007

Before:  FISHER and ROTH, *Circuit Judges*, and RAMBO,* *District Judge*.

(Filed:  )
_____

OPINION OF THE COURT
_____

RAMBO, *District Judge*.

---

*The Honorable Sylvia H. Rambo, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

William Yensick applied for and was denied supplemental security income. An Administrative Law Judge ("ALJ") for the Social Security Administration heard testimony as to Yensick's claim on July 14, 2004. After taking testimony and reviewing documentary evidence, the ALJ denied Yensick's claim on December 4, 2004, in a seventeen page opinion. The Social Security Appeals Council denied review. On July 7, 2005, Yensick filed a complaint in the Western District of Pennsylvania requesting judicial review of the ALJ's decision. Summary judgment was granted for the Commissioner. Yensick timely appealed. He argues that the ALJ erred at the final stage of the five-step process for determining whether a claimant is entitled to disability benefits. For the reasons that follow, we will vacate the order of summary judgment and remand this case for further proceedings.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis. The ALJ recited much of the substantial medical evidence on record in his written opinion. Yensick claims error in that the ALJ did not adequately support his decision to disregard the opinions provided by three individuals: Charles H. Goyette, Ph.D., a consulting psychologist; Robert Eby, Yensick's counselor; and Dr. Victoria Sepesky, Yensick's treating pain physician.

Dr. Goyette provided an assessment of Yensick's intellectual and psychological functioning, his academic achievement, neurocognitive and dexterity functioning, and

2

vocational interests. His findings are set forth in the ALJ's written opinion. (R. at 20.) Dr. Goyette concluded "that the claimant would likely be unable to obtain and maintain any type of gainful employment if his physical impairments were confirmed by his medical records." (R. at 29-30.) The ALJ found this last assertion "not credible" and did not give it any significant weight because "Dr. Goyette is a psychologist and could not be expected to have an opinion regarding [Yensick's] physical impairments." (R. at 30.)

Mr. Eby had seen Yensick every other week for approximately two years at the time that he provided an opinion on Yensick's psychological limitations. Evidence from Mr. Eby included an assessment of Yensick's mental ability to do work-related activities, a mental impairment questionnaire, and his notes of Yensick's treatment. Mr. Eby's opinions are set forth in the ALJ's written decision. (R. at 22.) The ALJ rejected Mr. Eby's opinion that Yensick "had mental limitations which would be disabling" because Mr. Eby also "reported that the claimant had a global assessment of functioning of 55 and 60 [according to the DSM-IV] over the prior year" which indicates moderate symptoms (R. at 30 (citations to the record omitted).) The ALJ also noted that Mr. Eby's own records indicate that Yensick's psychological condition was improving. Thus, the ALJ gave no significant weight to Mr. Eby's opinion that Yensick was disabled. (*Id.*)

Yensick treated with Dr. Sepesky for pain from on or about December 2001 through on or about May 5, 2004. (R. at 411-40.) She submitted a medical questionnaire evaluating Yensick's physical capacities on April 1, 2004. (R. at 402-05.) She indicated that, in an eight-hour work day, Yensick was able to sit for two hours per day, stand for

3

two hours per day, and walk one hour per day, with a change-of-position break every fifteen to twenty minutes. (R. at 402.) Dr. Sepesky noted that Yensick was not capable of bending, stooping, crawling, climbing, crouching, or kneeling. (R. at 403.) He could balance on his own for, at most, one hour. (*Id.*) He could lift up to five pounds frequently in the course of a work day and could lift up to twenty pounds occasionally, but could never lift more than twenty pounds. (*Id.*) Dr. Sepesky indicated that Yensick needed complete freedom to rest frequently throughout the day and that it was necessary for him to lie down or sit on a recliner for substantial portions of the day. (R. at 404.) Further, Dr. Sepesky indicated that Yensick's condition was permanent. (*Id.*) The ALJ summarized these findings as to Yensick's pain level and his resulting work limitations. (R. at 24, 27.) The ALJ did not, however, indicate whether he accepted or rejected her opinions.

At the hearing on Yensick's claim, the ALJ asked a vocational expert the following hypothetical question:

> Q: Please assume a younger individual with a high school education precluded from performing all but sedentary work with a sit/stand option. Occasional posturals. No hazards. Clean air. Unskilled low stress defined as one- and two-step processes, routine and repetitive tasks, primarily working with things rather than people, entry level. With these limitations, can you describe any work that this hypothetical individual can perform?
>
> A: Yes, Your Honor, there are jobs at the sedentary level that would comply with the hypothetical. Some examples are inspector/checkers, 150 local, 37,000 nation. Sorters and graders, 100 local, 20,000 nation. Waxers of glass products, 160 local, 66,000 nation. And assemblers of small products, 650 local, 149,000 nation.

4

(R. at 69.)

Then the ALJ asked additional hypothetical questions that modified the original, one of which was the following:

> Q: There's also an RFC of Dr. Sapeski [*sic*], the claimant's pain physician, in which she states . . . [that] the claimant can sit, stand, and walk only 5 hours total, is that inconsistent with the type of jobs you name?
>
> A: Yes, it is, Your Honor. The jobs that I gave to your hypothetical are all 8 hours a day 5 days a week.

(R. at 70.) Yensick's attorney then asked one additional hypothetical question:

> Q: [T]he jobs that you testified to in hypothetical number one, if we were to add an inability to perform fine manipulation how would that affect the jobs that you described for the judge?
>
> A: That would eliminate those jobs. These jobs all require bimanual dexterity and fine manipulation.

(R. at 71.)

Yensick's attorney did not otherwise object to the limitations as stated in the ALJ's questions.

In his written opinion, the ALJ concluded that in light of the testimony of the vocational expert, Yensick's age, educational background, work experience, and residual functional capacity, Yensick was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. at 31.) Thus, the ALJ found Yensick not disabled.

II.

5

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We exercise plenary review of the District Court's grant of summary judgment to the Commissioner, and may reverse only if the findings made by the ALJ were not supported by "substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). "Substantial evidence" is less than a preponderance but more than a mere scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Meaningful appellate review of a decision made by an ALJ is possible only when the ALJ sets forth the reasons supporting his decision. *Burnett v. Comm'r of Social Security Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Conclusory statements regarding the evidence or the condition of the claimant are not sufficient. *Id.* Rather, the ALJ should "fully develop the record and explain his findings" so that we may determine whether his conclusions are supported by substantial evidence. *Id.* at 120; *accord Jones*, 364 F.3d at 505.

### III.

The Social Security Administration has promulgated a five-step process to evaluate a claim of disability. The Administration must consider, in the following order, the following factors: 1) whether the claimant is currently working; 2) whether the claimant has a severe impairment; 3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) whether the

6

claimant can, in light of his disability and residual functional capacity[1] ("RFC"), perform his past relevant work; and 5) if the claimant is unable to perform his past relevant work, whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and RFC. *See* 20 C.F.R. § 404.1520(a)(4); *Jones*, 364 F.3d at 503. There is no dispute that Yensick meets the criteria in steps one through four. This appeal arises out of the ALJ's findings regarding step five, namely that there is work that Yensick can perform existing in significant numbers in the national economy, given his medical impairments, age, education, past work experience, and RFC.

In the course of drawing a conclusion as to step five, the ALJ may rely on testimony from a vocational expert. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Routinely, an ALJ will pose a hypothetical question to the expert, asking whether work exists in significant numbers in the national economy that could be performed by a person with the claimant's medical impairments, age, education, past work experience, and RFC. The question must "reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the question does not reflect all of a claimant's impairments undisputed by the record, "the expert's response is not considered substantial evidence" of whether work exists in significant numbers in the national

_____

[1]A claimant's RFC is that which the claimant is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1).

7

economy that could be performed by the claimant. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

In *Rutherford*, 399 F.3d at 554 n.8, we observed that challenges under step five of the disability determination are made in one of two ways: 1) the ALJ failed to convey all of a claimant's limitations to the vocational expert in his hypothetical question and 2) the ALJ failed to recognize credibly-established limitations during the RFC assessment, and therefore failed to convey those limitations to the vocational expert. Here, Yensick's appeal is best understood as, first, a challenge to the RFC assessment. If the RFC assessment was not supported by substantial evidence, Yensick then argues that the hypothetical question posed to the vocational expert necessarily was posed in error.

The ALJ must weigh the credibility of the medical and non-medical evidence before him to determine a claimant's RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Burnett*, 220 F.3d at 122. The ALJ's explanation of his conclusion must be as comprehensive and as analytical as possible and should include a statement of the facts in support so that we may discharge our duty to determine whether the conclusion is supported by substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Without this explanation "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705). "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions,

and will vacate or remand a case where such an explanation is not provided." *Fargnoli*, 247 F.3d at 42.

The ALJ must consider all relevant evidence from "acceptable medical sources" when determining a claimant's RFC.  20 C.F.R. § 416.913(a); *Fargnoli*, 247 F.3d at 41. An acceptable medical source, for current purposes, is a licensed physician or a licensed or certified psychologist.  20 C.F.R. § 416.913(a).  An opinion by a claimant's treating physician is entitled to substantial and sometimes controlling weight because a treating physician can "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from [other sources]."  20 C.F.R. § 404.1527(d)(2).  The treating physician's opinion must be supported by acceptable medical diagnostic techniques and be consistent with other substantial evidence in the case to be afforded greater or controlling weight. *Fargnoli*, 247 F.3d at 41; *see* 20 C.F.R. § 404.1527(d)(2).  If there is contradictory medical evidence in the record, including an opinion provided by a non-treating, non-examining physician, however, the ALJ may accept the most credible medical opinion. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  The ALJ may not "reject evidence for no reason or for the wrong reason."  *Rutherford*, 399 F.3d at 554.  Further, an ALJ "is not free to employ [his] own expertise against that of a physician who presents competent medical evidence."  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

9

The ALJ may also consider other opinions about a claimant's disability from persons who are not deemed "acceptable medical sources," such as a therapist who is not a licensed or certified psychologist. 20 C.F.R. § 416.913(d)(1). A treating therapist's opinion is not entitled to controlling weight, however. *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999); *compare* § 416.913(d) *with* § 404.1527(d)(2).

Here, the ALJ set forth thirteen pages summarizing the evidence of Yensick's disability that he considered relevant. (R. at 18-31.) He concluded that Yensick had the RFC to

> perform sedentary, sit/stand work. He must perform unskilled, entry level, low stress work with one to two step routine, repetitive tasks, working primarily with things rather than people. He must also work in a clean air environment with no requirement for more than occasional posturals, and no exposure to hazards such as dangerous and moving machinery or unprotected heights.

(R. at 29.) The ALJ then described the evidence he rejected in reaching his conclusion about Yensick's RFC.

## A. Dr. Goyette's Opinion

The plain language of the opinion states that the ALJ rejected only Dr. Goyette's assessment of Yensick's physical capacities, and that he did so because Dr. Goyette is a psychologist, not a medical doctor. Further, the record demonstrates that the ALJ incorporated other parts of Dr. Goyette's opinion into his analysis of all relevant evidence. (R. at 19-20, 32.) Dr. Goyette's diagnosis was "impulse control disorder, not otherwise specified; mixed personality disorder, with schizoid and paranoid features."

10

(R. at 20.) The ALJ specifically incorporated these diagnoses into his findings on Yensick's limitations (R. at 32), while noting that Yensick's mental health was improving (R. at 30). Additionally, the ALJ drew on Dr. Goyette's opinion that Yensick's concentration was adequate. (*Id.*) Yensick's argument that the ALJ rejected Dr. Goyette's opinion in its entirety (Appellant's Br. 20) is without merit. We find that the ALJ's stated reason for rejecting one of Dr. Goyette's many proffered opinions about Yensick's limitations satisfies his obligation to provide a meaningful record for appellate review.

### B.  Mr. Eby's Opinion

Yensick concedes that Mr. Eby is not an "acceptable medical source" whose opinion is entitled to controlling weight. (Appellant's Br. 21.) The ALJ was entitled to, and did, consider some evidence from Mr. Eby. *See* 20 C.F.R. § 416.913(d)(1); *Hartranft*, 181 F.3d at 361. The ALJ rejected Mr. Eby's opinion that Yensick had disabling mental limitations because Mr. Eby himself and Dr. Iyengar, a supervising psychiatrist, reported contradictory evidence that Yensick had only moderate symptoms of mental disability or moderate difficulty in social or occupational situations. (R. at 30.) Mr. Eby also opined that Yensick's psychological condition was improving. The ALJ noted a conflict in the evidence presented by the same treating source. It was properly within his purview to reject certain evidence that was inconsistent with substantial evidence and he stated his reason for doing so on the record. Yensick's argument that the ALJ "totally" rejected Mr. Eby's opinions (Appellant's Br. 21) is without merit. The

11

ALJ's stated reason for disregarding one element of Mr. Eby's assessment provides a satisfactory factual record for appellate review.

## C.  Dr. Sepesky's Opinion

Yensick treated with Dr. Sepesky for pain from in or about December 2001 through on or about May 5, 2004.  (R. at 411-40.)  She is an acceptable medical source for an opinion as to Yensick's disability under 20 C.F.R. § 416.913(a)(a) as a licensed physician.  As a treating physician, Dr. Sepesky's opinion should have been given controlling weight to the extent that her opinion was "well supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence" in Yensick's case.  *See* 20 C.F.R. § 404.1527(d)(2); *Fargnoli*, 247 F.3d at 41.  Dr. Sepesky submitted a medical questionnaire evaluating Yensick's physical capacities on April 1, 2004.  (R. at 402-05.)  She indicated that, in an eight-hour work day, Yensick was able to sit for two hours, stand for two hours, and walk for one hour, with a change-of-position break every fifteen to twenty minutes.  (R. at 402.)  Dr. Sepesky noted that Yensick was not capable of bending, stooping, crawling, climbing, crouching, or kneeling.  (R. at 403.)  He could balance on his own for, at most, one hour.  (*Id.*)  He could lift up to five pounds frequently in the course of a work day and could lift up to twenty pounds occasionally, but could never lift more than twenty pounds. (*Id.*)  Dr. Sepesky indicated that Yensick needed complete freedom to rest frequently throughout the day and that it was necessary for him to lie down or sit on a recliner for

12

substantial portions of the day.  (R. at 404.)  Further, Dr. Sepesky indicated that Yensick's condition was permanent.  (*Id.*)

The ALJ noted that Yensick had treated with Dr. Sepesky (R. at 24) and summarized her submissions on the medical questionnaire (R. at 27), but made no further mention of the opinions stated therein.  He did not provide an explicit indication as to whether he accepted or rejected the evidence from Dr. Sepesky, nor did he give reasons for doing so.  We can infer that he rejected it because his conclusion as to Yensick's RFC is inconsistent with Dr. Sepesky's stated opinions about Yensick's abilities and limitations.  The ALJ concluded that Yensick had the capacity to perform "sedentary, sit/stand work . . . unskilled, entry level, low stress work with a one to two step routine, repetitive tasks, working primarily with things rather than people . . . with no requirement for more than occasional posturals."  (R. at 29.)  Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 416.967(a).  Aside from the restriction as to the amount of weight to be lifted, "sedentary work" as defined in § 416.967(a) is inconsistent with the very precise limitations indicated by Dr. Sepesky.

There is probative evidence of record that conflicts with Dr. Sepesky's opinion about Yensick's limitations.  Thus, as we noted in *Fargnoli*, there is "a particularly acute

13

need for an explanation of the reasoning" supporting the ALJ's decision to reject her conclusions. *See* 247 F.3d at 42. It may be that the ALJ determined that contrary medical evidence so undermined Dr. Sepesky's opinion that it was not entitled to controlling weight. It may be that Dr. Sepesky's opinions stated in the questionnaire were not due controlling weight because they were not supported by a written report, test results, or other substantial evidence. We have no way to know because the ALJ did not perform the duty incumbent upon him to explain the reasons that he accepted or rejected her conclusions. We cannot determine if the potentially-probative evidence of Dr. Sepesky's opinion "was not credited or simply ignored." *See Burnett*, 220 F.3d at 121. Without knowing why the ALJ failed to credit Dr. Sepesky's opinion, we cannot conclude that his finding as to Yensick's RFC was supported by substantial evidence.

Thus, on remand, the ALJ must fully consider all of Dr. Sepesky's opinions as they relate to other evidence in this case. If he concludes that her opinions are not supported by substantial evidence, he shall state his reasons for so finding. If, however, he determines that some or all of her opinions are supported by substantial evidence and controlling, he must reassess Yensick's RFC in light of the limitations she identifies.

If Yensick's RFC changes because of Dr. Sepesky's opinions, the ALJ will be required to reexamine his conclusion achieved at step five of the analysis promulgated by the Social Security Administration: whether work exists in significant numbers in the national economy that Yensick can perform given his medical impairments, age, education, past work experience, and RFC. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("At the

14

fifth and last step, we consider our assessment of your residual functional capacity [and other factors] to see if you can make an adjustment to other work."). Before making this decision, the ALJ must pose a hypothetical question to a vocational expert that reflects all of Yensick's impairments supported by significant evidence on record, including those opinions by Dr. Sepesky that the ALJ deems credible. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If all impairments are included in this hypothetical, the expert's response will be considered substantial evidence of whether work exists in significant numbers in the national economy that Yensick could perform. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Thus informed, the ALJ may render his decision as to whether Yensick is disabled.[2]

## IV.

For the foregoing reasons, we will vacate the District Court's grant of summary judgment in favor of the Commissioner. We will remand this case for proceedings not inconsistent with this opinion.

---

[2]Yensick argues further that the hypothetical questions were flawed because they did not incorporate evidence from Dr. Goyette and Mr. Eby. His arguments are without merit, as discussed *supra*, because the ALJ properly incorporated or rejected their opinions in assessing Yensick's RFC and composing the hypotheticals. Moreover, Yensick did not object to the questions posed by the ALJ at the hearing and did not ask alternative hypothetical questions that encompassed the limitations he now argues should have been included. Exceptions not noted before the ALJ are waived on appeal. *C.f. Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001) (Sound policy "require[s] claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ.").