

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-11-2001

# Fargnoli v. Apfel

Precedential or Non-Precedential:

Docket 99-1989

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Fargnoli v. Apfel" (2001). *2001 Decisions.* Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 11, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1989

TOMMASO FARGNOLI,

Appellant

v.

WILLIAM A. HALTER,* COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 97-cv-6913)
District Judge: Honorable Clarence C. Newcomer

Argued: August 2, 2000

Before: ALITO, ROTH and AMBRO, Circuit Judges

(Filed April 11, 2001)

_____
* Substituted for Kenneth S. Apfel pursuant to Rule 43(c)(2) of the
Federal Rules of Appellate Procedure.

INEZ A. DE BAPTISTE, ESQUIRE
(Argued)
Silver & Silver
42 Lancaster Avenue
Ardmore, PA 19003

Counsel for Appellant

ANDREW C. LYNCH, ESQUIRE
(Argued)
Office of the General Counsel
Social Security Administration
P.O. Box 41777
Philadelphia, PA 19101

Counsel for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

This case arises from the denial of Tommaso Fargnoli's ("Fargnoli") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. SS 401–433 ("Act"). Fargnoli appeals the District Court's order granting summary judgment in favor of the Commissioner of the Social Security Administration (the "Commissioner").1 The District Court exercised jurisdiction pursuant to 42 U.S.C. S 405(g). Our jurisdiction arises under 28 U.S.C. S 1291. For the reasons set forth below, we will vacate the District Court's order and remand the case with instruction to return it to the Commissioner for further proceedings consistent with this opinion.

I. Factual and Procedural History

Fargnoli is an unskilled construction labor er with a fifth grade education. He was born in Italy and came to the United States in 1964 at the age of seventeen. Far gnoli applied for disability insurance benefits on October 29, 1993, alleging that as of May 10, 1985, he was disabled

_____

1. The Social Security Administration is her einafter referred to as the "SSA."

2

and unable to work due to a work-related back injury. Because of his limited work history, Fargnoli's date last insured was December 31, 1990. He was denied benefits initially and on reconsideration.2  At Fargnoli's request, a hearing before an administrative law judge (the"ALJ") was held on February 15, 1996.

Fargnoli appeared at the hearing with his counsel and testified, with the assistance of an Italian interpreter, about his back impairment. Fargnoli testified that he suffers from severe low back pain and radicular pain primarily in the left leg but at times in the right leg. He also testified that he sometimes has problems with numbness in his left arm. When asked how his impairment affects his ability to work around the house, Fargnoli testified that he has difficulty going up and down the stairs and is unable to do any household chores. He also testified that he has difficulty dressing because he cannot bend over. W ith regard to work restrictions, he testified that his back injury limits him to lifting approximately five to ten pounds, sitting or standing for only ten to twenty minutes at a time, and walking the equivalent of only one to two blocks. Further , he testified that although he occasionally drives, doing so is painful because he cannot take his pain medication which makes him sleepy and dizzy. He testified that his medications at the time of the ALJ hearing were Daypro, a nonsteroid anti-inflammatory, and Ultram, a pain reliever .

The medical evidence of record, as developed before the ALJ, reflects that Fargnoli had been continuously treated with two doctors since his May 1985 injury -- Dr . Dennis B. Zaslow, an orthopedic surgeon, and Dr . Max Karpin, a neurosurgeon. Dr. Zaslow saw Far gnoli approximately once a month from September 1985 until approximately July 1995. At Fargnoli's initial visit in September 1985, Dr. Zaslow diagnosed Fargnoli with an acute lower dorsal and lumbar sprain and strain and lumbosacral somatic

_____

2. The administrative review within the SSA of eligibility for disability insurance benefits involves a four-step pr ocedure, consisting of an initial
determination, a request for reconsideration, a request for a hearing before an ALJ, and a request for r eview of the ALJ's decision by the Appeals Council. See 20 C.F.R. S 404.900.

dysfunction. He stated that Fargnoli's range of motion in his lower back was poor, his gait was labor ed and he favored his left leg. Further, he noted that Fargnoli's left shoulder was drooped lower than the right, his trunk was sidebent to the left and paravertebral spasms wer e seen in the lumbar muscles of the middle to lower back. Finally, he indicated that straight leg raising was causing radicular pain in Fargnoli's left leg. Based on his evaluations, Dr. Zaslow stated that Fargnoli could not work as of December 31, 1990, his date last insured.

Dr. Zaslow's treatment notes consistently document objective muscular symptoms associated with Far gnoli's back impairment, including his inability to perform or difficulty with squatting, bending, leg lifting, changing positions, sitting, standing and walking, his tender ness to palpitation and manipulation, and the often spastic condition of his low back. Dr. Zaslow's tr eatment notes also document the variability of Fargnoli's condition, which changed depending on various conditions, impr oved with prolonged periods of rest or immobilization and favorable weather, and worsened with periods of incr eased activity or occurrences of poor weather.

In January 1986, Fargnoli began treatment with Dr. Karpin. At Fargnoli's initial visit, Dr . Karpin reported that Fargnoli had a labored gait, difficulty walking, was favoring the left lower extremity, and had limited flexion and paravertebral spasm. Dr. Karpin's diagnosis was post-traumatic status, low back syndrome, dorsolumbar sprain and strain and left lumbar radiculopathy. Dr . Karpin reported similar findings until approximately November 7, 1986, when he noted that Fargnoli was showing gradual improvement. Dr. Karpin's later tr eatment notes reflect his opinion that Fargnoli suffered fr om chronic back pain that would improve and worsen periodically accor ding to factors such as activity and weather, but would neither improve nor worsen on a permanent basis from continued medication and physical therapy. Over the course of Fargnoli's treatment, Dr. Karpin prescribed numerous medications.

The record reflects reports or mention of certain diagnostic tests, including an October 1985 EMG of

4

Fargnoli's left lower extremity, an October 1985 CT-scan of his lumbar spine, and a thermogram. In his November 17, 1985 report, Dr. Zaslow states that the EMG was abnormal and notes that the findings were suggestive of radiculopathy at the L5 region. Further , he states that the CT-scan showed degeneration of the L3-L4 disc and a strong possibility of a fracture of the anterior edge of the superior plateau of L4. Finally, he notes that the thermogram was abnormal. A tomogram of the spine was performed in late 1985 to confir m the existence of a fracture. It indicated interosseous distal herniation of the lumbar spine, but no evidence of fracture. A February 1986 MRI was performed that evidenced an abnormal disc intensity between L3-4 with a high degree of suspicion of herniation and abnormal discs between L1-2, L4-5 and L5-S1. A January 1986 bone scan was reported by Dr . Zaslow as being normal. Although strongly r ecommended by both Drs. Zaslow and Karpin to confirm disc her niation, Fargnoli would not agree to undergo a myelogram because of his fear of needles and invasive procedures.

Additionally, the treatment notes of Dr . Zaslow and Dr. Karpin reflect that Fargnoli has under gone physical therapy, varying from three times a week to one time a week, from after his accident until appr oximately September 1991, although the treatment notes fr om his therapists are not included in the recor d.3

On August 5, 1996, the ALJ issued an opinion denying Fargnoli's claim for disability insurance benefits, stating that "the evidence of record does not r eveal that the claimant's condition was sufficiently sever e to preclude him from performing at least light work. . . ." The Appeals Council of the SSA declined further review on October 4,

_____

3. The record also includes the tr eatment notes and opinions of physicians treating or examining Fargnoli, or reviewing his medical records, after his date last insur ed (December 31, 1990). Because these treatment notes and opinions are for a time period after Fargnoli's last insured date and, with the exception of one tr eatment note from Dr. Karpin, were not mentioned in the ALJ's opinion, we do not know what significance, if any, they had in the ALJ's deter mination. On remand, the ALJ should discuss the significance of these r ecords and whether he is relying on any of them in reaching his determination.

5

1997, making the ALJ's determination the final decision of the Commissioner.

Having exhausted his administrative remedies, Fargnoli filed an action in the United States District Court for the Eastern District of Pennsylvania seeking judicial review of the ALJ's decision. The parties filed cross-motions for summary judgment. The District Court granted the Commissioner's request for summary judgment and denied Fargnoli's request. Fargnoli appeals the District Court's decision.

II. Discussion

A. Standard of Review.

Although our review of the District Court's or der for summary judgment is plenary, "our review of the ALJ's decision is more deferential as we deter mine whether there is substantial evidence to support the decision of the Commissioner." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence has been defined as `more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.' " Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir . 1995)). Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Thus, the general issue before us is whether the ALJ's finding that Fargnoli was not disabled, and thus not entitled to disability insurance benefits, is supported by substantial evidence.

B. Determination of Disability

Under the Social Security Act, a disability is established where the claimant demonstrates that ther e is some " `medically determinable basis for an impairment that prevents him from engaging in any `substantial gainful activity' for a statutory twelve-month period.' " Plummer, 186 F.3d at 427 (quoting Stunkard v. Sec. of Health & Human Servs., 841 F.2d 57, 59 (3d Cir . 1988)); see also 20 C.F.R. S 404.1505(a). A claimant is considered unable to engage in any substantial gainful activity "only if his

6

physical or mental impairment or impair ments are of such severity that he is not only unable to do his pr evious work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. S 423(d)(2)(A). This disability determination is made by the Commissioner based on a five-step sequential evaluation process promulgated by the Social Security Administration ("SSA"). See 20 C.F.R. S 404.1520. In Plummer, this Court set out the relevant steps as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. S [404.]1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suf fering from a severe impairment. 20 C.F.R.S 404.1520(c). If the claimant fails to show that her impairments ar e "severe," she is ineligible for disability benefits.

> In step three, the Commissioner compar es the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. S 404.1520(d). If a claimant does not suffer from a listed impair ment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. S 404.1520(d). The claimant bears the bur den of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

> If the claimant is unable to resume her for mer occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. S 404.1520(f). The ALJ must show there are other jobs existing in

7

significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of per forming work and is not disabled. See 20 C.F .R. S 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir . 1984).

186 F.3d at 428.

In this case, the ALJ undertook the five-step sequential evaluation in determining that Fargnoli was not disabled. The ALJ made the following findings: (1) Far gnoli had not engaged in any substantial gainful activity since the alleged onset date of disability; (2) he suffers fr om a severe back impairment; (3) his back impairment, although severe, does not meet or equal the criteria of the Listing of Impairments set forth in 20 C.F.R. Pt. 404, Subpt. P , App. 1; (4) he retains the residual functional capacity to engage in light work, and therefore cannot retur n to his past relevant work as a construction laborer because it is heavy work; and (5) based on his age, educational background, work experience, and limitations, the medical vocational guidelines (the "Grids") direct a finding of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2,S 202.17. The ALJ erred, Fargnoli contends, at step four in determining that he retained the residual functional capacity to do light work. We agree.4

_____

4. Although not raised by Fargnoli, and therefore not an issue in this appeal, we also note our concern with the conclusion reached by the ALJ at step three in the sequential evaluation pr ocess and the discussion thereof. The ALJ determined that Far gnoli's back impairment did not meet the Listing of Impairments at 20 C.F .R. Pt. 404, Subpt. P, App. 1. He stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular consideration was given to Listing 1.00 (musculoskeletal system)." First, we note that in reviewing the voluminous medical evidence for our discussion of step four of the pr ocess, we found treatment notes and diagnostic tests ar guably meeting the Listing of

8

C. Step Four Evaluation: Residual Functional Capacity

" `Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).' " Bur nett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir . 2000) (quoting Hartranft, 181 F.3d at 359 n.1); see also 20 C.F.R. S 404.1545(a). In this case, the ALJ deter mined that Fargnoli had the residual functional capacity to perform light work. The SSA defines work as "light" when it

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of ar m or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.

20 C.F.R. S 404.1567(b). The SSA has further explained that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." Jesurum v. Sec. of Health & Human Servs., 48 F.3d 114, 119 (3d Cir. 1995) (citing Social Security Ruling 83–10).

After reviewing the record, we find it impossible to determine whether the ALJ's finding that Far gnoli can perform light work is supported by substantial evidence. We are handicapped by the fact that the ALJ has (1) failed to evaluate adequately all relevant evidence and to explain the basis of his conclusions and (2) failed to explain his

_____

Impairments in S 1.05 (disorders of the spine). Second, we note that this Court requires more than just a conclusory statement that a claimant does not meet the listings. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119–20 (3d Cir. 2000) (r emanding where conclusory statement "is similarly beyond meaningful judicial review," with directions that ALJ should "fully develop the record and explain his findings at step three, including an analysis of whether and why [the claimant's] . . . impairments . . . ar e or are not equivalent in severity to one of the listed impairments").

assessment of the credibility of, and weight given to, the medical evidence and opinions from Fargnoli's treating physicians that contradict the ALJ's finding that Fargnoli can perform light work. We therefore vacate the decision of the District Court and remand with instruction to remand to the ALJ for further proceedings.[5]

> 1. The ALJ Must Evaluate All the Evidence and Explain the Basis for his Conclusions.

The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four. See 20 C.F.R. SS 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. See 20 C.F.R. S 404.1545(a). Moreover, the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). In Cotter, we explained that

> [i]n our view an examiner's findings should be as

_____

5. Fargnoli urges us to conclude further that the ALJ improperly relied on Fargnoli's desire to return to work at a light exertional level and to take a trip to Europe as substantial evidence that he could perform light work. Although it is not the primary basis for our remand, we agree. In this particular case, we believe that Fargnoli's expressed desire to return to work at a light duty job cannot support a finding that he is actually capable of such work when he later testified that he cannot perform light work and his testimony is consistent with restrictions imposed by his treating physician. See Talbot v. Heckler, 814 F.2d 1456, 1461 (10th Cir. 1987) (claimant's application for vocational training did not create inference that "claimant thought he could work at a full range of light activity" as opposed to a "limited range of light or sedentary activity"). Furthermore, Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity. See Jesurum, 48 F.3d at 119 (claimant's trip to Rhode Island two years prior to hearing was a "sporadic and transitory activity that cannot be used to show an ability to engage in substantial gainful activity").

10

comprehensive and analytical as feasible and, where
appropriate, should include a statement of subordinate
factual foundations on which ultimate factual
conclusions are based, so that a reviewing court may
know the basis for the decision. This is necessary so
that the court may properly exercise its r esponsibility
under 42 U.S.C. S 405(g) to determine if the Secretary's
decision is supported by substantial evidence.

Id. at 705 (quoting Baerga v. Richardson, 500 F.2d 309,
312 (3d Cir. 1974)).

The ALJ's discussion of the relevant medical evidence in
Fargnoli's case was limited to the following four paragraphs:

A medical report from [Dr. Zaslow], doctor of
osteopathy, dated December 16, 1995, revealed that
the claimant complained of increasing pain since his
work-related accident in May 1985. Dr. Zaslow stated
a computerized tomography scan of the lumbar spine,
done on October 19, 1985, indicated degeneration of
the L3-4 disc. A thermogram done on October 24, 1985
was reported as normal and showed L4-L5 nerve fiber
involvement on the left side. An electromyography
performed on October 30, 1985 showed evidence of
radiculopathy. A medical report from Dr . Zaslow, dated
December 5, 1986, stated that a bone scan per formed
on January 22, 1986 was completely normal. The
claimant stated that he was able to stand for an hour
and sit for several hours.

A report by [Dr. Karpin], dated December 12, 1986,
stated that a magnetic resonance imaging showed
abnormal disc intensity between L3-4, and abnormal
disc between L-1 and L-2, and to a lesser extent
between L-4, 5 and L5-S1. It was reported that the
claimant refused to undergo a myelogram to confirm
the findings and chose to continue with the
conservative treatments for a while longer . Dr. Karpin
stated that the claimant has to maintain a 1,000
calorie [diet] to lose weight in order to reduce the
pressure on his back.

A report by Dr. Zaslow, dated December 4, 1987,
stated that the claimant complained about pain over

11

the midline. There was considerable spasm of the back with the inability to flex forward. The claimant stated that he wanted a light duty job, but no light duty work was available for him.

A medical report by Dr. Karpin, dated February 22, 1991, stated that the claimant was still having difficulty with his lower back, but was able to cope with the pain and discomfort as long as he took his muscle relaxant and non-steroidal anti-inflammatory. The claimant was maintained on Robaxin, Feldene and physical therapy.6

In the passages quoted above, the ALJ describes four diagnostic tests and five treatment notes. Yet our review of the record reflects over 115 pages of relevant, probative treatment notes from Drs. Zaslow and Karpin detailing Fargnoli's medical condition and progress. The disparity between the actual record and the ALJ's sparse synopsis of it makes it impossible for us to review the ALJ's decision, for we "cannot tell if significant probative evidence was not credited or simply ignored." Burnett, 220 F.3d at 121 (quoting Cotter, 642 F.2d at 705).

Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant, such as Fargnoli, has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law. His failure to do so here leaves us little choice but to remand for a more comprehensive analysis of the evidence

_____

6. The Commissioner argues that the ALJ's finding is further supported by a workers' compensation commutation entered into by Fargnoli in 1995, in which he stipulates that he has an agreed earning power of a certain sum, and the opinions of three doctors examining Fargnoli after his date last insured for disability benefits (December 31, 1990). See Appellee's Br. at 3-4. Although this information may have been in the file
before the ALJ, there is no evidence in the record that any of it was considered by him. Furthermore, after reviewing the record, we cannot find two of the opinions relied on by the Commissioner. We therefore cannot consider them as a basis for finding that the ALJ's decision is supported by substantial evidence.

12

consistent with the requirements of applicable regulations
and the law of this Circuit, both as discussed in more detail
below.

>    2. The ALJ Must Assess the Credibility of, and Explain
>    the Weight Given To, Conflicting Medical Evidence by
>    the Claimant's Treating Physicians.

This Court has long been concerned with ALJ opinions
that fail properly to consider, discuss and weigh relevant
medical evidence. See Dobrowolsky v. Califano, 606 F.2d
403, 406-07 (3d Cir. 1979) ("This Court has repeatedly
emphasized that the special nature of pr oceedings for
disability benefits dictates care on the part of the agency in
developing an administrative record and in explicitly
weighing all evidence."). Where ther e is conflicting probative
evidence in the record, we recognize a particularly acute
need for an explanation of the reasoning behind the ALJ's
conclusions, and will vacate or remand a case where such
an explanation is not provided. See Cotter , 642 F.2d at 706
(listing cases remanded for ALJ's failur e to provide
explanation of reason for rejecting or not addressing
relevant probative evidence).

In his opinion the ALJ finds Fargnoli to have a severe
back impairment, but not so severe that it prevents him
from performing light work that includes frequently lifting
ten pounds, occasionally lifting twenty pounds, and
standing and walking for six hours out of an eight-hour
day. In reaching this finding, the ALJ does not mention the
contradictory finding of Dr. Zaslow, nor does he explain his
assessment of the credibility of Drs. Zaslow and Karpin or
the weight given to their treatment notes and opinions.

Under applicable regulations and the law of this Court,
opinions of a claimant's treating physician ar e entitled to
substantial and at times even controlling weight. See 20
C.F.R. S 404.1527(d)(2); Cotter, 642 F.2d at 704. The
regulations explain that more weight is given to a
claimant's treating physician because

>    these sources are likely to be the medical professionals
>    most able to provide a detailed, longitudinal picture of
>    [the claimant's] medical impairment(s) and may bring a

13

> unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone
> or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. S 404.1527(d)(2). Wher e a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in[the claimant's] case record," it will be given "controlling weight." Id.

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence. See Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 705. In Burnett, we determined that the ALJ had not met his responsibilities because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. W e therefore remanded the case to the ALJ with instructions to "r eview all of the pertinent medical evidence, explaining any conciliations and rejections." Id. at 122.

The record reflects that thr oughout his treating history Dr. Zaslow consistently found Fargnoli to suffer from a severe and dehabilitating chronic back condition that often requires bed rest or immobilization. Countless treatment notes document Fargnoli's spastic condition, the immobility of his lower back, the radicular pain to his legs and his tenderness to palpitation and manipulation. Fargnoli points out that Dr. Zaslow has opined on twenty-thr ee separate occasions that he is disabled. Dr. Zaslow has restricted Fargnoli to only seven to ten pounds of lifting, no prolonged periods of walking and no climbing, bending or squatting. He has also opined that Fargnoli is incapable of even sedentary work.

Although never opining on Fargnoli's vocational restrictions or limitations, Dr. Karpin's clinical findings are consistent with Fargnoli's complaints. Dr . Karpin found that Fargnoli suffers from r educed mobility, spasms and

14

tenderness to palpitation. Further, Dr . Karpin's treatment notes document the sensitivity of Fargnoli's back impairment to changes in the weather and his activity level. Finally, Dr. Karpin noted that, although Far gnoli's chronic condition can be maintained at status quo with continued medication and physical therapy, he will continue to suffer symptoms associated with his back impairment.

The ALJ makes no mention of any of these significant contradictory findings, leaving us to wonder whether he considered and rejected them, consider ed and discounted them, or failed to consider them at all. "The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error." Cotter, 642 F.2d at 707.7 We therefore cannot conclude that his findings at step four were supported by substantial evidence. Mor eover, we cannot affirm the ALJ's determination that Fargnoli was not disabled under the Grids because that determination requires that Fargnoli be capable of light exertional work.

III. Conclusion

For the foregoing reasons, the District Court's order granting summary judgment to the Commissioner will be vacated and remanded to the District Court with instructions to remand to the Commissioner for additional proceedings consistent with this opinion. On r emand, the ALJ must consider and make specific findings as to all of the relevant probative medical evidence, including assessing the credibility of the evidence and weighing that evidence. Further, to the extent that the ALJ reaches a finding contradictory to that of Fargnoli's treating physicians, he must explain the reasoning behind such a

_____

7. The District Court, apparently recognizing the ALJ's failure to consider
all of the relevant and probative evidence, attempted to rectify this error
by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of SEC v. Chenery Corporation, 318 U.S. 80 (1943), that "[t]he grounds upon which an administrative or der must be judged are those upon which the record discloses that its action was based." Id. at 87; see also Healtheast Bethesda Lutheran Hosp. & Rehab. Ctr . v. Shalala, 164 F.3d 415, 418 (8th Cir. 1998) (r ecognizing Chenery in case deciding claim for Social Security disability insurance benefits).

finding, including reconciling conflicts and discussing how and why probative evidence supporting Far gnoli's claim was discounted and/or rejected.

16

ROTH, Circuit Judge, dissenting:

I respectfully dissent. This case presents the not uncommon conflict between treating physician and independent medical examiner. The treating physician has determined that the petitioner is unable to work. The independent medical examiner finds that the objective tests do not substantiate the subjective complaints and that the petitioner is exaggerating. In view of the fact that the Administrative Law Judge credited the testimony of the latter, rather than the former, I am persuaded that the decision is supported by sufficient evidence. I am also concerned by the petitioner's refusal to permit tests and treatment that would alleviate a ruptur ed disc if that is indeed his problem. For these reasons, I would affirm the decision of the District Court, upholding the deter mination of the Administrative Law Judge.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17