**SEN TRINH**

v.

**Michael ASTRUE, Commissioner of the Social Security Administration.**

**Civil Action No. 10–2960.**

United States District Court,
E.D. Pennsylvania.

Oct. 16, 2012.

Sharon Gornstein, Leventhal Sutton & Gornstein, Trevose, PA, for Sen Trinh.

Eda Giusti, Social Security Administration, Philadelphia, PA, for Michael Astrue.

### ORDER

CYNTHIA M. RUFE, District Judge.

Plaintiff, Sen Trinh, filed this action requesting judicial review of the final deci-

sion of the Commissioner of the Social Security Administration ("Commissioner"), which affirmed the decision of the Administrative Law Judge ("ALJ") and denied Plaintiff's claim for benefits under the Social Security Disability Insurance program. This Court referred the case to United States Magistrate Judge Carol Sandra Moore Wells for a Report and Recommendation ("R & R"). Magistrate Judge Wells recommended that the Commissioner's decision be affirmed. Plaintiff has filed objections to the R & R, to which the Commissioner has responded.

■■■■ A district court reviewing a decision of the Commissioner must base its decision on the record of the administrative proceedings and the pleadings of the parties.[1] The court's review of legal issues is plenary, but its factual review is limited.[2] The court must determine whether the record contains substantial evidence to support the ALJ's factual findings, and whether the Commissioner applied the proper legal standards in making its decision.[3] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] The amount required is more than a mere scintilla, but less than a preponderance of the evidence.[5] If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[6]

■■■■ In considering whether to approve the report and recommendation of a magistrate judge, a district court must review *de novo* those portions of the report and recommendation to which a party has objected.[7] The court may in its discretion "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[8]

Plaintiff in this case applied for benefits immediately upon receiving a diagnosis of cervical cancer.[9] There is no dispute that the treatment for the cancer was successful.[10] The question is whether the treatment caused ongoing debilitating fatigue that would prevent Plaintiff from working. The ALJ determined that Plaintiff's complaints of fatigue were entitled to some credence, but that Plaintiff's claim of disabling fatigue was not supported by the record.[11] Plaintiff argues that the ALJ's written determination does not support this finding, and that the Magistrate Judge improperly substituted her own review of the medical evidence, instead of evaluating the reasons stated by the ALJ, in particular with regard to the evidence of Plaintiff's radiation oncologist, Dr. Komarnicky–Kocher, and the physician who treated the cancer, Dr. King, and that the ALJ failed to state explicit reasons for accepting or rejecting the testimony of Plaintiff's daughter.

1. 42 U.S.C. § 405(g).

2. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.1999).

3. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir.2001).

4. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted); *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995).

5. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988).

6. *Fargnoli*, 247 F.3d at 38.

7. 28 U.S.C. § 636(b)(1)(c).

8. *Id.*

9. R. at 18.

10. R. at 16.

11. R. at 17–18.

*First Objection: The Magistrate Judge Wrongly Affirmed the ALJ's Credibility Determination upon a Rationale Not Employed by the ALJ*

 Plaintiff is correct that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'"[12] Plaintiff is incorrect, however, in arguing that the Magistrate Judge failed to examine the ALJ's analysis of the medical evidence. The ALJ discussed radiation oncologist Dr. Komarnicky–Kocher's treatment notes, and later interrogatory responses, finding that the notes stated that Plaintiff had "no complaints whatsoever," and that in an interrogatory response of December 31, 2007, the doctor "stated that some patients complain of fatigue as a result of treatment [and that] those complaints usually would be noted by other doctors."[13] The ALJ also noted that a follow-up interrogatory on January 4, 2008, elicited a response from Dr. Komarnicky–Kocher that she "did recall complaints of fatigue and low energy by this patient."[14] The Magistrate Judge characterized the ALJ's discussion of the December 31, 2007 interrogatory response as the doctor indicating "that she did not recall any of Plaintiff's complaints of fatigue after or during her treatment."[15] Although the ALJ did not use the word "recall" with regard to

the December 31, 2007 response, it is uncontested that Dr. Komarnicky–Kocher at that time did not state that Plaintiff had complained of fatigue, but instead stated that any such complaints usually would be noted by Plaintiff's gynecological oncologist.[16] Thus, even if the Magistrate Judge inaccurately characterized the ALJ's description of Dr. Komarnicky–Kocher's interrogatory response, the Magistrate Judge's characterization of the treatment notes and the earlier interrogatory response as "conflicting" with the January 4, 2007 response[17] reflects the substance of the ALJ's analysis and the Magistrate Judge properly found that this analysis was supported by the record.

Plaintiff also objects to the Magistrate Judge noting that Dr. King, who treated Plaintiff's cervical cancer, did not mention fatigue in her treatment note or on a medical form, because the ALJ did not rely on that fact.[18] However, although the ALJ did not explicitly cite specific portions of Dr. King's report, she did note that Plaintiff's response to Dr. King's treatment was excellent.[19] The objection will be overruled on this point.

*Second Objection: The Magistrate Judge Wrongly Found to be Harmless the ALJ's Failure to Properly Assess the Credibility of a Witness*

 The ALJ discussed, but not did not explicitly make a credibility finding with

---

**12.** *Fargnoli,* 247 F.3d at 44, n. 7 (quoting *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

**13.** R. at 17.

**14.** R. at 17.

**15.** R & R at 526.

**16.** R. at 323.

**17.** R & R at 526–27.

**18.** R & R at 526–27.

**19.** R & R at 523–24 (citing Ex. 4F, which includes all of the evidence referred to by the Magistrate Judge). The ALJ summarized all of the relevant medical evidence in rejecting Plaintiff's claim of debilitating fatigue. R. at 17–18 ("The record establishes that 'fatigue' can be a result of cancer treatment and that one of claimant's doctors recalls that she had complained of fatigue. Fatigue is a nonspecific symptom, and hard to quantify. The claimant may experience a degree of fatigue, but not so much as to interfere with significant daily activities....").

regard to, the testimony of Plaintiff's daughter, Ms. Hunyh. The Magistrate Judge concluded that the ALJ erred by not explicitly assessing the credibility of Ms. Hunyh but that the failure to do so was harmless error.[20] Plaintiff argues that the ALJ rejected Plaintiff's testimony because it was inconsistent with her daughter's testimony, and that the ALJ therefore was required to explicitly explain which parts of the daughter's testimony were accepted or rejected.[21] Plaintiff attempts to place too strict a burden on the ALJ.

■ The ALJ is required to state the reasons for finding a witness's testimony not credible,[22] and it is error for the ALJ to fail to address the credibility of witnesses whose testimony was offered for the purpose of bolstering the credibility of the claimant.[23] In this case, the ALJ discussed the testimony of both Plaintiff and her daughter.[24] The ALJ noted both the discrepancies between their testimony (for example, where Plaintiff lives, and whether Plaintiff gave a newsstand business to her nephew when she became ill or sold it to the nephew), and the consistencies (for example, Plaintiff's daily two-hour exercise routine and her lack of energy).[25] Considering the testimony of both witnesses, as well as the medical evidence, the ALJ concluded that Plaintiff's "medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[26] Because the ALJ unquestionably considered the testimony of Plaintiff's daughter in reaching this determination, which is supported by substantial evidence, the objection is overruled.

**AND NOW,** this 16th day of October 2012, after careful review and consideration of Plaintiff's request for review, Defendant's response, and the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, and the objections and response thereto, it is hereby **ORDERED** that:

1. The Clerk of Court is directed to remove this action from the suspense docket and return it to the active docket;

2. Plaintiff's Objections are **OVERRULED;**

3. The Report and Recommendation is **APPROVED** and **ADOPTED;** and

4. The decision of the Commissioner is **AFFIRMED.**

It is so **ORDERED.**

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS, United States Magistrate Judge.

Senh Trinh ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g) of

---

**20.** R & R at 528.

**21.** Pl.'s Objections at 4.

**22.** *Van Horn v. Schweiker,* 717 F.2d 871, 873–74 (3d Cir.1983) ("While the ALJ is empowered to evaluate the credibility of witnesses, we would expect him at least to state that he found a witness not credible before wholly disregarding his testimony. Indeed, if this ALJ did in fact find Van Horn and all of his witnesses devoid of credibility, we cannot understand why he would not have stated some reason for that conclusion.") (citations omitted).

**23.** *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir.2000).

**24.** R. at 15–16.

**25.** R. at 18.

**26.** R. at 16.

the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Plaintiff has filed a Brief and a Statement of Issues in Support of Plaintiff's Request for Review; the Commissioner has responded to these pleadings. This case was referred to the undersigned by the Honorable Cynthia M. Rufe, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation. For the reasons set forth below, it is recommended that Plaintiff's request for review be DENIED and JUDGMENT ENTERED in favor of the Commissioner.

## I. PROCEDURAL HISTORY [1]

On August 10, 2006, Plaintiff protectively applied for DIB benefits alleging disability, since May 1, 2006, as a result of cervical cancer. (R. 114, 130). After benefits were denied initially on September 25, 2006, (R. 85–88), Plaintiff requested and was granted an administrative hearing. (R. 7, 89, 96). On October 4, 2007, Plaintiff, represented by counsel, and Mai Huynh, Plaintiff's daughter, appeared before Linda Bernstein, Administrative Law Judge ("ALJ"). (R. 81–82); the hearing was continued to allow the ALJ to request an interpreter to be present to translate Plaintiff's testimony. (R. 82). On November 13, 2007, Plaintiff, through an interpreter, Garry Young, Vocational Expert ("VE"), and Ms. Huynh testified at a second administrative hearing before ALJ Bernstein. (R. 20–78). On January 10, 2008, ALJ Bernstein, using the sequential evaluation process for disability,[2] issued an unfavorable decision finding that Plaintiff could perform her past relevant work as a (newsstand) cashier, a driver, a census taker and as an inspector, in addition to, the full range of light work. (R. 14, 18). On April 17, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. 1–3).

## II. FACTUAL BACKGROUND

### A. *Personal History*

Plaintiff, born on November 16, 1944, was sixty-one years old on the date she filed applied for DIB. (R. 114). She graduated high school in Vietnam, (R. 24), and has past work experience as a census

1. The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response to Request for Review of Plaintiff, Plaintiff's Reply and the administrative record ("R."), including all exhibits thereto.

2. The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 CFR § 404.1520(b);

 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 CFR § 404.1520(c);

 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 CFR, a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 CFR § 404.1520(d);

 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 CFR § 404.1520(f); and

 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 CFR § 404.1520(g).

worker, cook helper, inspector of computer chips, newsstand vendor driver for mental health patients. (R. 28–32, 70).

## B. *Administrative Hearing Testimony*

### 1. *Plaintiff's Testimony*

At the November 13, 2007 administrative hearing, Plaintiff testified that she suffers from depression, limited hearing in her left ear, neck, bilateral knee and back pain, and fatigue secondary to radiation and chemotherapy treatments for cervical cancer. (R. 33–41). Plaintiff stated that her cancer treatment that ended in August 2006, *see* (R. 34), caused her pain and difficulty turning her neck to the right side; she is able to turn her neck more easily after exercising. (R. 35, 37, 42–43). Plaintiff complained that fatigue limits her ability to work and daily morning back pain improves after she exercises. (R. 39–40). In the afternoons, Plaintiff's fatigue, back and neck pain cause her to lie down on the sofa for one-half of an hour to a full hour. (R. 43–44). Plaintiff reported that her headaches improved after exercise. (R. 44).

Plaintiff alleged difficulty standing in the morning; she sits down to dress. (R. 40). Daily, Plaintiff drives herself to the gym to exercise to help alleviate her pain; she had exercised the morning of the hearing for forty-five minutes. (R. 35–36, 47–48). Plaintiff routinely completes two morning exercise classes as well as pool exercises; daily, she exercises at the gym for one to two hours. (R. 36, 45). She cooks, does laundry and sweeps the floor. (R. 37–38). Her daughter grocery shops for her; (R. 36), Plaintiff cannot drive long distances because her eyes get tired. (R. 39). Her daughter drives her to visit her husband who resides in a nursing home. (R. 38). Plaintiff regularly attends religious services at her temple. (R. 38–39).

She testified that she can no longer operate her newsstand because her work hours were very long and she has hearing loss in her right ear. (R. 40–41). Plaintiff stated that she could understand customer's orders in English at the newsstand, while at her computer chip position she communicated with other workers in Vietnamese. (R. 41).

### 2. *Ms. Mai Huynh's Testimony*

Ms. Mai Huynh, Plaintiff's daughter, testified at the November 13, 2007 administrative hearing regarding Plaintiff's ailments and activities of daily living. (R. 49–69). Ms. Huynh lives and works from her home in New Jersey where she resides with her brother; Plaintiff with Ms. Huynh while she was undergoing cancer treatments. (R. 49, 51–52). At the time of the hearing, Plaintiff only occasionally spents the night with Ms. Huynh (R. 53) and primarily resided in Southwest Philadelphia with another daughter who is disabled due to a mental impairment; Plaintiff does not own the Philadelphia home. (R. 50–53).

Ms. Huynh testified that her mother drives daily to the gym to exercise and does not drive anywhere else. (R. 53). During approximately two hours at the gym, Plaintiff performs various exercises including step aerobics, pool exercises, riding an exercise bicycle, light weight lifting, and walking on the treadmill. (R. 55–56). During the day, Plaintiff keeps herself busy by performing light dusting, washing dishes and clothes, cleaning and cooking. (R. 57, 68). Occasionally, Plaintiff's son or Ms. Huynh accompany Plaintiff when she grocery shops. (R. 68). Ms. Huynh testified that Plaintiff is depressed, routinely lies down and spends portions of her day meditating while reciting Buddhist Mantras; prior to her cancer treatment Plain-

tiff worked without experiencing fatigue. (R. 57–59, 61, 69).

Prior to her cancer diagnosis and treatment, Plaintiff performed her work at the newsstand while either on a stool or standing; she often served her customers while seated. (R. 66–67). Plaintiff often had difficulty hearing and communicating with customers many of whom wrote down their orders. (R. 65). In May of 2006, Plaintiff ceased working after the cancer diagnosis, (R. 60–61), and sold her newsstand to her nephew, because the treatment caused fatigue, poor memory, a pinched nerve, numbness in her fingers, headaches, insomnia, acid reflux, and pain. (R. 53–54, 61). Dr. Morrison, Plaintiff's neurologist, recommended that she exercise in lieu of attending physical therapy to alleviate her symptoms, including fatigue. (R. 62–63).

### C. *Vocational Testimony*

At the administrative hearing the vocational expert ("VE") classified Plaintiff's past position as a cook helper as unskilled [3] and medium work,[4] her census survey and cashier work at the newsstand as unskilled and light work,[5] her position was a patient escort/driver as semi-skilled [6] and medium work, and her chip inspector job as semi-skilled work at the sedentary level.[7] (R. 70–71). The ALJ asked the VE to consider whether a hypothetical person that could perform medium work could perform any of Plaintiff's past relevant work; the VE opined that this hypothetical person could perform all of Plaintiff's past relevant positions. (R. 71). If the hypothetical person could perform only light work they could perform all of Plaintiff's past relevant work except for her past job as a cook helper. *Id.* The VE further noted that all of Plaintiff's past relevant work, except for the cook helper position, exists at the sedentary level with a sit/stand option. (R. 71–72). The VE opined that an individual who could only occasionally turn their head to the right side could still perform any of Plaintiff's past relevant jobs. (R. 72). However, if Plaintiff needed to lie down, unpredictably, during the day, she could not sustain any employment. (R. 77).

### III. THE ALJ's FINDINGS

After the administrative hearing, the ALJ issued the following relevant findings:

3. [Plaintiff] has the following severe impairment: S/P treatment for cervical cancer. (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one

---

**3.** Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength … [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

**4.** "Medium work involves lifting no more that 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

**5.** "Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

**6.** Semi-skilled work requires "some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b).

**7.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform the full range of light work.

6. The vocational expert testified that [Plaintiff] is capable of performing past relevant work as a cashier [newsstand] (light/unskilled), a driver (light/semi-skilled), a census taker (light/unskilled) and an inspector (light/unskilled). This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since May 1, 2006, the date the application was filed (20 CFR 404.1520(f)).

(R. 13–19).

## IV. DISCUSSION

### A. Standard of Judicial Review

■■■ Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir.1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988). Overall, this test is deferential to the ALJ and the

Court should affirm the ALJ's findings of fact, if they are supported by substantial evidence even when the Court, acting *de novo*, might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Schaudeck*, 181 F.3d at 431.

### B. Burden of Proof in Disability Proceedings

■■■ In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); 42 U.S.C. § 423(d)(2)(A).

■■■ Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the bur-

den of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir.1993).

### C. *Review of the Administrative Law Judge's Decision*

The ALJ determined that Plaintiff was not disabled at any time through the date of her decision and, therefore, denied her disability benefits. (R. 20). Plaintiff asserts that the ALJ erroneously failed to: (1) properly assess her credibility concerning her complaints of fatigue and the impact fatigue has on her ability to perform her past relevant work; and (2) assess Ms. Hunyh's credibility. *Plaintiff's Brief and Statement of Issues In Support of Plaintiff's Request for Review ("Pl.'s Br.")* at 4–14. The Commissioner requests that the court affirm his properly supported final ruling. *Defendant's Response to Plaintiff's Request for Review* ("Def.'s Br.") at 4–16.

#### 1. *The ALJ Properly Assessed Plaintiff's Credibility*

Plaintiff argues that the ALJ failed to properly assess her credibility, including whether her fatigue precludes a return to her past relevant work. Pl.'s Br. at 4–12. The Commissioner contends that the ALJ correctly assessed Plaintiff's credibility. Def.'s Br. at 5–14.

■■■■■ Ordinarily, a reviewing court should defer to the ALJ's credibility determination, because he or she has had the opportunity during a hearing to assess the witnesses' demeanor. *See Reefer v. Barnhart,* 326 F.3d 376, 380 (3d Cir.2003). The ALJ must indicate what evidence she is rejecting and provide valid reasons for discounting that evidence. *See Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir.2001)

(citing *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3d Cir.2000)). Although the ALJ's credibility determination is entitled to deference, it must be supported by the record. *Reefer,* 326 F.3d at 380.

■■■■ Plaintiff complains that, since undergoing chemotherapy and radiation to treat her cervical cancer, she is disabled by debilitating fatigue. Pl's. Br. at 7. Plaintiff further asserts that despite engaging in a regular two-hour morning exercise regimen, which includes step aerobic classes and walking on a treadmill, she is unable to work a full eight-hour day without resting. *Id.* In assessing Plaintiff's credibility the ALJ specifically found that:

> ... [Plaintiff] is not a credible witness as her testimony contained many conflicts. She testified that she lives with her daughter in New Jersey. The daughter testified that she lives with a disabled daughter in Philadelphia. It may be that [Plaintiff] divides time between the two residences. [Plaintiff] said that she gave the newsstand to her nephew when she became sick. However, the daughter said, and it is mentioned in the record, that she sold the business to her nephew. [Plaintiff] claimed to know no English. However, it is doubtful that she could run a newsstand without any English. She stated that she would have the customers write down their lottery purchases, but this would appear to be a generalized practice. [Plaintiff] goes to the gym every morning and exercises by taking various classes and using the machines. She testified that she is there about two hours. It is a five minute drive from her house. She had been to the gym the morning of the hearing, held at [1:00 p.m.]. She stated that she does light housework and cooks. [Plaintiff] ap-

plied for these benefits immediately on receiving the diagnosis of cervical cancer. It is hard to understand how she could have predicted that she would be disabled 12 months hence. Her treatment was speedily completed and entirely successful. Thus, I only partially credit [Plaintiff's] allegations.

(R. 18). The ALJ's explanation for finding Plaintiff partially credible is supported by the record. Medical evidence does not buttress Plaintiff's subjective complaints of debilitating fatigue. At the administrative hearing, Ms. Hunyh testified that she attends *"every"* medical appointment with Plaintiff. *See* (R. 61–62) (emphasis added). Ms. Hunyh stated that she and Plaintiff complained, on numerous occasions, to Plaintiff's oncologist, radiologist and primary care physician that Plaintiff suffers from constant fatigue. (R. 61). Yet, Plaintiff's numerous complaints of debilitating fatigue are not documented in the medical record. The ALJ discussed Plaintiff's treatment by her neurologist, Tara Morrison, M.D., who opined that Plaintiff had a good response to therapy and encouraged Plaintiff to continue her exercise regimen to treat her headaches, which were eventually cured, and her neck pain. (R. 17); *see also* (R. 250–51). Dr. Morrison noted that Plaintiff's daughter attended her medical appointments to translate because of a language barrier. (R. 254–55). Ms. Hunyh testified that Dr. Morrison recommended that Plaintiff exercise to treat her mother's fatigue. (R. 63). However, Dr. Morrison's treatment notes indicate that she recommended exercise to treat Plaintiff's headaches and neck pain, *not* fatigue. (R. 250–55). Dr. Morrison's treatment records do not document any complaints of or treatment for fatigue. (R. 250–65). Likewise, Plaintiff's treatment records from Philadelphia Health Center # 3 reflect no complaints of debilitating fatigue. (R. 17); *see also* (R. 289–94).

The ALJ noted that, on October 5, 2007, Plaintiff's radiation oncologist, Lydia T. Komarnicky–Kocher, M.D., reported that her response to the cervical cancer treatment was "excellent;" during physical examination Plaintiff had "no complaints whatsoever, and is doing quite well." (R. 17); *see also* (R. 296). The ALJ discussed Dr. Komarnicky–Kocher's December 31, 2007 response to interrogatories in which Dr. Komarnicky–Kocher indicates that she did not recall any of Plaintiff's complaints of fatigue after or during her treatment and that "complaints related to fatigue would be best charted by [her gynecological oncologist] in that fatigue would be more of a systemic complaint related to that treatment." (R. 17); *see also* (R. 323). On January 4, 2008, Dr. Komarnicky–Kocher, in a second interrogatory, confirmed that complaints of fatigue would be best documented by Plaintiff's gynecological oncologist; however, Dr. Komarnicky–Kocher now recalled Plaintiff's complaints of fatigue and low energy since completing her chemotherapy and radiation treatments. (R. 324). The court notes that Dr. Komarnicky–Kocher's January 4, 2008 interrogatory response contradicts both her treatment notes that do not mention fatigue and her prior interrogatory responses. *See* (R. 323). The ALJ's reliance upon Dr. Komarnicky–Kocher's conflicting response, the contemporaneous medical records and Plaintiff's conflicting testimony was proper. (R. 17–18).

The record contains treatment records from Plaintiff's gynecological oncologist, Stephanie A. King, M.D. (R. 193–205, 240–47, 267–74). Dr. Komarnicky–Kocher opined that Plaintiff's complaints of fatigue would be best documented by this physician, because fatigue is often a side effect of chemotherapy. (R. 323–24). On July 7, 2006, following her May 2006 cervical cancer diagnosis, Plaintiff began a daily high-

dosage of radiation treatment and weekly chemotherapy regimen which were both completed on August 3, 2006. (R. 193). On August 24, 2006, Dr. King examined Plaintiff and noted in a medical form her "excellent response" to chemotherapy and radiation and found no evidence of persistent cancer. (R. 194). Dr. King did not indicate, in the space provided on the medical form, that Plaintiff experienced fatigue or "any complicating posttherapeutic residuals, i.e. nausea, vomiting, diarrhea, or weakness" that Plaintiff allegedly experienced and reported following her chemotherapy and radiation treatments. *Id.* On June 7, 2007, Dr. King examined Plaintiff and wrote in a follow-up letter to Dr. Komarnicky–Kocher that Plaintiff *"has had no further problems"* since her cervical cancer diagnosis in May 2006 and radiation and chemotherapy treatments in August 2006. (R. 267) (emphasis added). Ms. Hunyh stated that she and Plaintiff complained about Plaintiff's fatigue to Dr. King who stated that Plaintiff's fatigue was not her problem and that her focus was only on Plaintiff's cancer and Plaintiff should address her complaints of fatigue to her primary care physician. (R. 61–64). Thus, Ms. Hunyh's testimony regarding Dr. King's statement and medical treatment are not supported by the record. Ms. Hunyh's testimony contradicts Dr. Komarnicky–Kocher's interrogatory response and opinion that Plaintiff's complaints of fatigue would be "best charted" by her gynecological oncologist, Dr. King. (R. 323–24), Dr. King's treatment notes, *see* (R. 268–69), are devoid of complaints of or treatment for fatigue. Thus, the medical evidence supports the ALJ's credibility assessment that Plaintiff's complaints of debilitating fatigue are not fully credible.

The ALJ's decision thoroughly discussed Plaintiff's successful treatment for cervical cancer, Dr. Komarnicky–Kocher's treatment records and responses to interrogatories, Dr. Morrison's treatment notes, Dr. King's treatment records, medical records from Philadelphia Health Center # 3, the inconsistencies in Plaintiff's and Ms. Huynh's testimony and her activities of daily living to assess her credibility regarding allegations of debilitating fatigue. (R. 15–18). Plaintiff has failed to present any medical evidence, i.e. treatment notes or lab reports, or a valid argument to contravene the ALJ's credibility findings. The ALJ articulated valid reasons for limiting Plaintiff's credibility, hence, this court will not disturb her findings. *See Fargnoli,* 247 F.3d at 43 (citing *Burnett,* 220 F.3d at 121).

### 2. The ALJ's Treatment of Ms. Hunyh's Testimony Does Not Warrant Remand

Plaintiff argues that the ALJ committed reversible error in failing to adequately assess and make specific credibility findings regarding the testimony of, Ms. Hunyh, Plaintiff's daughter. Pl.'s Br. at 12–14. The Commissioner contends that the ALJ discussed Ms. Hunyh's testimony, at length, and found that Plaintiff was not credible due to several inconsistencies between Plaintiff's testimony and Ms. Hunyh's testimony. Def.'s Br. at 14. The Commissioner further asserts that the ALJ made implicit findings of Ms. Hunyh's credibility and committed no reversible error warranting remand. Def.'s Br. at 15–16.

█ In her decision, the ALJ specifically noted several inconsistencies between Ms. Hunyh's testimony and that of Plaintiff:

> [Ms. Hunyh], on the other hand, testified that [Plaintiff] lives with a disabled daughter in Philadelphia. When given an account of her [Plaintiff's] testimony, [Ms. Hunyh] modified her testimony to state that [Plaintiff] goes back and forth.

[Ms. Hunyh] stated that [Plaintiff] gave her newsstand to her nephew when [Plaintiff] got sick. However, [Ms. Hunyh] stated, and it is mentioned in the record, that [Plaintiff] sold the business to [Plaintiff's] nephew. [Plaintiff] stated that she knew no English. However, in an activities questionnaire, as seen at Exhibit 3E, [Plaintiff] stated that she has a limited ability to speak and comprehend the English language.

[Ms. Hunyh] testified that [Plaintiff] stayed with her in New Jersey while [Plaintiff] was ill. [Plaintiff] lives in Southwest Philadelphia with [Ms. Hunyh's] disabled sister. [Plaintiff] travels back and forth between these two homes. [Plaintiff] did not return to work due to lack of energy and side effects of medications. [Plaintiff] goes to the gym daily and it alleviate her pain. [Plaintiff] mainly attends aerobics classes and goes to the pool. Sometimes, [Plaintiff] walks on the treadmill and uses the machines. [Plaintiff] has low energy and her mind is not as sharp as it used to be. The neurologist advised her to exercise. When [Plaintiff] operated the newsstand, [Plaintiff] opened packages, hung merchandise, and operated the lottery machine. [Ms. Hunyh] stated that [Plaintiff] is able to do light dusting, sweep the floor (i.e. a "Swiffer"), wash light dishes, launder and grocery shop but never alone. [Plaintiff] has been depressed since [Plaintiff] was diagnosed with cancer. [Plaintiff] is unable to sit for a long period of time and lies down a lot due to decreased energy. When [Plaintiff] applied [for DIB], [Plaintiff] stated she had no trouble with sitting. (R. 16). The ALJ discussed Ms. Hunyh's testimony in detail and explicitly found Plaintiff's level of activity to be inconsistent with her subjective complaints and responses to her Disability Questionnaire.

(R. 16); *see* SSR 96–7p, 1996 WL 374186 *5–*8 (An ALJ must consider the consistency of a Plaintiff's statements when evaluating credibility and may draw inferences from family and friends). Thus, the ALJ made an *implicit* credibility finding regarding Ms. Hunyh's testimony and determined that her testimony does not fully corroborate Plaintiff's testimony and responses. (R. 15–16). However, in this Circuit, an ALJ must explicitly assess the credibility of each witness and explain what testimony has been accepted or rejected. *See Burnett,* 220 F.3d at 122. The ALJ's treatment of Ms. Hunyh's testimony, therefore, contravenes Third Circuit requirements. However, unlike the ALJ in *Burnett,* this ALJ did not simply ignore Ms. Hunyh's testimony; rather, the ALJ failed to assess directly Ms. Hunyh's testimony and state what, if any, of Ms. Hunyh's testimony is accepted or rejected. Despite this oversight, this court finds that the ALJ's failure to *explicitly* state her credibility finding regarding Ms. Hunyh's testimony is, harmless error that does not necessitate remand. *See Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir.2005) (explaining that in determining whether or not remand is necessary this court must assess whether or not the seemingly overlooked data would have proven "outcome determinative.") The inconsistencies as summarized by the ALJ, between Plaintiff's responses to questionnaires and her testimony, in addition to the inconsistencies in Ms. Hunyh's own testimony, *see* (R. 15–18), support the ALJ's finding that Plaintiff is not fully credible. Since remand to further evaluate Ms. Hunyh's testimony and credibility would not change the outcome of Plaintiff's case, the error is harmless.

## V. CONCLUSION

After a thorough review of the record, this court finds that all of the Commission-

er's findings are supported by substantial evidence. Accordingly, I make the following recommendation:

## RECOMMENDATION

AND NOW, this 20th day of June, 2011, I respectfully recommend that:

1. The Report and Recommendation be APPROVED and ADOPTED;

2. The Plaintiff's Request for Review be DENIED; and

3. Judgment be ENTERED in favor of the Commissioner of the Social Security Administration.

It be so ORDERED.